CAPITAL ELECTRIC POWER ASSN. *v.* HINSON

No. 39741 January 9, 1956 84 So. 2d 409

452

*Wm. Harold Cox,* Jackson, for appellant.

*Teller & Biedenharn, George W. Rogers, Jr.,* Vicksburg, for appellee.

*Teller & Biedenharn, George W. Rogers, Jr.,* Vicksburg, for appellee.

*Wm. Harold Cox,* Jackson, for appellant.

GILLESPIE, J.

## ON SUGGESTION OF ERROR

The former opinion in this case is withdrawn.

 █ Mrs. Emma Hinson, the appellee, as plaintiff below, sued Capital Electric Power Association, appellant, the defendant below. The declaration was in four counts: first, for the statutory penalty for cutting timber in clearing a power line right of way; second, for wilful and wrongful trespass on the plaintiff's property; third, for the actual value of the timber cut; and, fourth,

for causing plaintiff to be held in contempt and ridicule by her neighbors because of the defendant representing to them that plaintiff was depriving her neighbors of electric power by refusing to give defendant a right of way through plaintiff's lands. We have concluded that there was no proof on which a judgment could have been rendered against appellant on counts two and four, and that the lower court was correct in refusing to allow the case to go to the jury on those counts.

The court peremptorily instructed the jury to find for appellee on counts one and three, and judgment was entered for appellee for $775 statutory penalty and $40 actual damages, a total of $815. No issue developed as to the kind and number of trees cut or the actual value thereof.

The facts are substantially without dispute. The appellant is a corporation organized under Article 3, Chapter 6, Title 21 of the Code of 1942. On August 29, 1938, the owner of a tract of land in Warren County granted appellant an easement for a right of way, the pertinent parts of which are as follows:

". . . . does hereby grant unto Capital Electric Power Association . . . . . the right to enter upon the lands of the undersigned, . . . . . and to place, construct, operate, maintain, relocate and replace thereon and in or upon all streets, roads or highways abutting said lands an electric transmission or distribution line or system, and to cut and trim trees and shrubbery to the extent necessary to keep them clear of said electric lines or system and to cut down from time to time all dead, weak, leaning or dangerous trees that are tall enough to strike the wires in falling."

The words "to remain as constructed" were inserted in handwriting. The easement was a printed form. It was never recorded.

The same property passed by mesne conveyances to appellee and her husband, J. R. Hinson, on August 24,

1945. J. R. Hinson conveyed his interest to appellee on May 3, 1948. Appellant constructed an electric power line on subject property in 1939. This line ran across a road and part way across the subject land, and required two poles. From this line the residence on the property was served with electricity. Later, about 1943, another pole was placed on the land to serve another residence located on the property. Appellee and her family moved on the property after it was acquired in 1945 and the power line was then located on the property as stated. During the approximately four years that appellee and her family lived on the land they were serviced with electric power over the lines and the right of way was cleared every two years, with appellee's consent. For about six years prior to the occurrence hereafter mentioned, the land was rented to a tenant, who lived thereon in the residence previously occupied by appellee and her family.

Sometime prior to June 14, 1954, one Sanders, whose land and home was located north and east of appellee's land, applied to appellant for electric service. Appellant sent its engineer to Sanders' place to determine the route the line should run to his house and to stake the place for the pole and right of way. The only practicable route was to run 475 feet north from the line already on appellee's property, thence east 175 feet to Sanders' property. Appellant's agent got permission from appellee's tenant to place the stake on appellee's land and at that time the agent did not know that the tenant was not the owner of the land. Appellant then sent out a crew who cut the right of way as staked by the engineer, being 475 feet north and 175 feet east on lands of appellee. Appellee's husband learned of the cutting of the right of way before the pole and wire were placed on the land. Appellant then learned that appellee objected, and after that did not again go upon appellee's land.

The appellant offered to introduce the easement granted appellant in 1938 by W. O. Aldridge and wife, the then owners of the land. The court sustained an objection to its introduction on the ground that "it is cloudy in its meaning. It seems to limit its terms by the writing in there not being by typewriter." The court was referring to the words "to remain as constructed."

The proof was conclusive that appellee owned the land and trees, and that appellant cut the trees on the proposed right of way without the consent of appellee. Therefore, as to count three, appellee was entitled to a directed verdict for the actual value of the trees so cut unless the easement referred to gave appellant the right to extend the right of way in order to serve the Sanders property with electricity.

The grant originally made by Aldridge in 1938 was a general one as to the extent of the burden of the easement on the servient lands. It did not fix the location of the right of way, its length, or its terminal points. The grantor had the first right to designate the location of the power line right of way; but he did not exercise this right, and thereupon the owner of the easement had the right to make a selection of the location, provided he did so reasonably as to both parties, in view of all the circumstances so as not to unreasonably interfere with the enjoyment of the servient estate. 28 C.J.S., Easements, par. 79. The location of the easement was selected by appellant in 1939 by building a power line to the residence of the grantor. Subsequently, in 1942 or 1943, an additional pole was placed on the land to serve a tenant house. No extension of the easement was attempted until the year 1954, when Sanders, who lived on the adjoining lands, applied for electric service.

"The rule is well settled that where a grant of an easement is general as to the extent of the burden to be imposed on the servient tenement, an exercise of the right, with the acquiescence and consent of both parties,

in a particular course or manner, fixes the right and limits it to the particular course or manner in which it has been enjoyed. The grant of a way when there is any uncertainity or ambiguity in it may be interpreted by reference to the attendant circumstances, to the situation of the parties, and especially to the practical interpretation put upon the grant by the acts of the parties in the use of the easement immediately following the grant. When the grant is ambiguous the construction given by the parties themselves, as proved by the manner in which they exercise their rights under the conveyance, is legal evidence. Evidence of the use made of a right of way is evidence of the extent of the right, but not of its existence." Thompson on Real Property, Vol. 2, Sec. 581, pages 188-189.

"As a general rule, in the absence of contrary statute, the location of an easement when once established cannot be changed by either party without the other's consent except under the authority of a grant or reservation to this effect." 28 C.J.S., Easements, Sec. 84, p. 763.

"The rule has been established in many jurisdictions that if an easement is granted in general terms which do not fix its location, the owner of the servient estate has the right, in the first instance, to designate the location of such easement. This right, however, must be exercised in a reasonable manner with due regard to the rights of the owner of the easement. In this situation, if the owner of the servient estate does not designate the location, the person entitled to an easement may select a suitable route, taking into consideration the interest and convenience of the owner of the land over which the easement passes . . . . . . The reasonable convenience of both parties is of prime importance, and the court cannot act arbitrarily, but must proceed with due regard for the rights of both parties. It has been said that if not otherwise fixed, the location of an easement is determined by the practical location and use by the grantee,

acquiesced in by the grantor at the time of the grant and for a long time subsequent thereto.'' 17 Am. Jur., Sec. 86, pages 987-988.

''The general rule is that the location of an easement once selected cannot be changed by either the landowner or the easement owner without the other's consent. The reason for this rule is that treating the location as variable would incite litigation and depreciate the value and discourage the improvement of the land upon which the easement is charged. Accordingly, a definite location of an easement determines and limits the right of the grantee so that he cannot again exercise a choice . . . .'' 17 Am. Jur., Easements, Sec. 87, pages 988-989.

■■ The appellant did not acquire the right to use the land of appellant without limitation. We hold that where there is a grant of a right of way easement which is in general terms as to location, length, or terminal points, and is therefore uncertain and ambiguous, it should be interpreted by reference to all attendant circumstances, including the purposes contemplated by the parties at the time of the execution of the grant; and the extent of the servitude is determined by ascertaining what is necessary to accomplish the purpose contemplated by the parties when the grant is made, as to which consideration should be given to the practical interpretation put upon the grant by the acts of the parties in the use of the grant.

■■ Applying the foregoing rules to the facts of this case, we reach the conclusion that the purpose contemplated by Aldridge and appellant when the easement was granted was to supply electrical energy to the residence located on the subject land, and in order to accomplish this mutually desired purpose, it was necessary to construct a power line to such residence. This was done; the purpose of the easement was accomplished. We are not vitally concerned with the fact that an additional pole was placed on the land in 1943 to serve a

tenant house located near the residence referred to. That was done either to accomplish the original purpose of the grant or by mutual agreement of the parties.

■ ■ Moreover, the easement was drawn by appellant and is to be interpreted most favorably to the grantor as to any ambiguity appearing therein. After the transmission line was built in 1939, and later to the tenant house, the purpose contemplated by the parties was accomplished. The owner of the easement had fixed its rights as to the course and manner the easement was to be used and enjoyed. The uncertainty and ambiguity as to the location of the easement was therefore interpreted by the parties by the rights actually exercised. The rights thus became fixed within the foregoing rules of law.

■ ■ We are not unmindful of the far reaching importance of this decision, since the evidence shows that there are thousands of like easements in existence. The general rule is that where the grant is in general terms, the exercise of the right, with the acquiescence of both parties, in a particular course or manner, fixes the right and limits it to the particular course or manner in which it has been enjoyed. In reason, this rule applies not alone to the location of the easement, but also to the extent thereof, and, therefore, determines its terminal points in the case of a right of way; it applies to the course, manner, extent, and length.

We need not consider here the meaning of the words inserted in this easement as follows, "to remain as constructed." Nor do we need consider the meaning and effect of the express right to "relocate" the power line, since the issue here does not involve the relocation of the power line right of way, but the extention thereof. But it should be observed that there is nothing in the easement granting the appellant the right to extend the easement, or to make additions thereto once it is established.

■■ ■ The appellant was not granted an unlimited right to use the lands of the grantor; and what we here hold is to permit such reasonable use to be made of the servient lands as to accomplish that which the parties contemplated at the time of the grant, as evidenced by what the owner of the easement did pursuant to the grant within a reasonable time thereafter, with the acquiescence of the landowner. It would not be consistent with established law to permit the owner of the easement to make extensions of its right of way whenever new conditions or demands for its services require additional use of the servient lands; for to do so would subject the servient lands to potentially unlimited future burdens, the extent of which would never be fixed. Such unlimited right was not expressly granted, and on sound principle, we should not so interpret them to inhere in the general grant. The lower court correctly granted appellee the peremptory instruction for the actual value of the trees cut by appellant.

■■ ■ Count one of the declaration was for the statutory penalty. The appellee was not entitled to a directed verdict on this count. The appellee made out a prima facie case under the statute as amended by Chapter 312 of the Laws of 1950 by proving that she was the owner of the trees, and that appellant cut the trees without her consent. The appellant attempted to show good faith, as to which it had the affirmative under the statute. It also set up the right to cut the trees by virtue of its easement. It offered the easement, the understanding of appellant's manager as to what rights appellant had thereunder, the fact that he desisted immediately upon being informed that appellee objected to the cutting of the right of way, and the fact that appellant's agent asked permission of appellee's tenant, not then knowing the tenant was not the owner, before staking the right of way. All these facts should have been admitted on the question of good faith and the issue submitted to the jury.

The easement should be admitted in evidence on the issue of good faith, not as evidence of appellant's right to cut the trees, for appellant had no such right, but for what it would be worth to the jury on the issue of good faith.

Affirmed in part, reversed in part, remanded on direct appeal, and affirmed on cross appeal, suggestion of error sustained in part and overruled in part.

*Hall, Lee, Holmes* and *Ethridge,* JJ., concur.