236 Miss. 429 (1959)
110 So.2d 612
HAMILTON
v.
TRANSCONTINENTAL GAS PIPE LINE CORP.
No. 41115.
Supreme Court of Mississippi.
April 13, 1959.
Collins & Odom, Laurel, for appellant.
*430 Beard, Pack & Ratcliff, Laurel; M.M. Roberts, Hattiesburg; W.H. Davidson, Jr., Houston, Texas, for appellee.
*431 LEE, J.
This is an appeal by J.C. Hamilton from a decree of the Chancery Court of Jones County which enjoined him and his wife from interfering with Transcontinental *432 Gas Pipe Line Corporation in laying an additional pipe line across their property.
J.C. Hamilton, on April 11, 1949, and Lillie Bell McCurtis and husband, George W. McCurtis, on May 20, 1949, for stated considerations, by separate right of way agreements, duly executed and recorded, conveyed and warranted to Transcontinental Gas Pipe Line Corporation "a right of way and easement for the purposes of laying, constructing, maintaining, operating, repairing, altering, replacing and removing pipe lines (with valves, regulators, meters, fittings, appliances, tie-overs, and appurtenant facilities) for the transportation of gas, oil, petroleum products, or any other liquids, gases, or substances which can be transported through a pipe line, the Grantee to have the right to select the route under, upon, over, through and across the lands of Grantor, situated in the County of Jones, Dist. #2, State of Mississippi, (describing them). There is included in this grant the right, from time to time, to lay, construct, maintain, operate, alter, repair, remove, change the size of, and replace one or more additional lines of pipe approximately parallel with the first pipe line laid by Grantee hereunder; but for any such additional line so laid the Grantee shall pay Grantor, or the depository hereinafter designated, a sum equivalent of One Dollar ($1.00) per lineal rod of such additional line, or such proportionate part thereof as Grantor's interest in said lands bears to the entire fee, within sixty (60) days subsequent to the completion of the construction of such additional line." (Emphasis supplied.)
In the Hamilton instrument, there was this added provision: "* * * area for clearing first pipe line limited to strip of land 75 feet in width, and after construction permanent occupied space for said pipe line will not exceed strip of land not in excess of 30 feet in width."
The McCurtis land, consisting of fifteen acres, lay west of the Hamilton land, which was forty acres in *433 area. A pipe line was placed across these premises in 1950 in the center of a seventy-five foot right of way, and it has been in operation ever since. Subsequently, on August 19, 1954, Hamilton purchased the McCurtis land.
Thereafter the pipe line corporation determined to lay, construct and maintain an additional line approximately parallel with the existing line and a short distance, about forty seven feet, south of it. The additional line was in the process of being constructed. When the workmen reached the Hamilton land on July 10, 1958, he forbade their entry upon the land formerly owned by the McCurtises unless the line was place entirely within the seventy five foot existing right of way thereon, or on the balance of the land over which he granted the original right of way unless such additional line should be placed entirely within the right of way thereof which, he maintained, was only thirty feet wide.
With an impasse existing, the pipe line corporation applied to the chancery court for an injunction to prevent Hamilton and his wife from interfering with the construction. The defendants were cited, and, on the return day, appeared and contested the issuance of the injunction. At the conclusion of the hearing, the court granted the temporary injunction as prayed for. Subsequently the defendants filed a motion to dissolve, which, after a hearing, was overruled, and on Hamilton's motion, an interlocutory appeal was granted and perfected to this Court.
The appellant assigned and argues in effect that the court was in error in removing him from possession by mandatory process because (1) the right of way instruments, drawn by the appellee, must be constructed most strongly against the drawer, and such instruments do not expressly grant more than one right of way. Besides, he says, (2) the terms of the grant are general and indefinite, and, when once the right of way was selected, *434 its location could not be changed except by the agreement of the parties because, so to do, would violate a rule of property.
It is not even debatable that instruments drawn by a party in interest, must be construed most strongly against the drawer. This principle is so well settled as to need no citation of authority.
It is also well settled that "* * * where a grant of an easement is general as to the extent of the burden to be imposed on the servient tenement, an exercise of the right, with the acquiescence and consent of both parties, in a particular course or manner, fixes the right and limits it to the particular course or manner in which it has been enjoyed. * * *." Capital Electric Power Association v. Hinson, 226 Miss. 450, 84 So.2d 409, citing Thompson on Real Property, Vol. 2, Sec. 581, pages 188-189. The opinion also cited 28 C.J.S., Easements, Sec. 84, page 763 as follows: "As a general rule, in the absence of contrary statute, the location of an easement when once established cannot be changed by either party without the other's consent except under the authority of a grant or reservation to this effect."
Among other authorities, the appellant cites Winslow v. City of Vallejo, 148 Cal. 723, 84 Pac. 191, 5 L.R.A. (NS) 851, 113 Am. St. Rep. 349, where the city, in the exercise of its right under a grant, laid a ten inch water main, and after the lapse of about nine years, because of inadequacy, it determined to lay an additional fourteen inch pipe within three feet of the existing line. But the court, in holding that the servitude could not be so increased, found" * * * nothing in the language of this grant, or in the conditions existing when it was executed, to indicate that it was intended to give the defendant the right to increase from time to time the number of pipes laid."
Likewise, in City of Lynchburg v. Smith, 186 S.E. 51, a Virginia case, the water main was constructed *435 largely of redwood staves, which, after a time, rotted, and the city determined to replace this conduit by the construction of a cast iron pipe line to be laid approximately three feet from the old line, thus taking about six additional feet for the right of way. The court held that such a change would increase the servitude. Since the city's grant made no provision for such an increase, the court held that it could not be done except on payment of additional compensation.
(Hn 1) The cases, cited by appellant, are not applicable here because the appellee, under its grant, was not only authorized to lay an original line, but also "from time to time, to lay, construct * * * one or more additional lines of pipe approximately parallel with the first pipe line laid by grantee hereunder." Besides, compensation therefor was to be paid at the rate of $1 per lineal rod within sixty days after the completion of the work.
In Crawford v. Tennessee Gas Transmission Company, 250 S.W.2d 237, a Texas case, (1952), the right of way agreement was almost identical with the language of the instrument now under consideration. It authorized the laying, etc., "at any time one or more additional lines of pipe adjacent to and parallel with the first pipe line laid by grantee on said right of way," and provided pay of one cent per lineal rod of such additional line. In that case, the first pipe line was laid in 1944, and two subsequent installations were made, one on each side of the original line. The appellant objected to the construction of the third line and ordered the crews of the appellee off his land. The trial court issued an injunction, which restrained the appellant from interfering with the construction, holding that the right of way agreement authorized the construction of the additional lines. On appeal, the Court of Civil Appeals affirmed the decision of the trial court.
In Baker v. Tennessee Gas Transmission Company, 250 S.W.2d 566, (1952), a Tennessee case, the right of *436 way agreement was of like effect, providing that the grantee could construct, etc., "at any time or from time to time one or more additional lines of pipe," and also providing for payment therefor. The first line mentioned under the contract was constructed; but later, when the appellee proposed to locate a second line at a different place from the first and according to a course not parallel, the Bakers refused entry to it. The trial court held that the appellee had the right, under the agreement, to construct the second line. This action was affirmed by the Supreme Court of Tennessee. See also Tennessee Gas Transmission Company v. Bayles, 74 Fed. Supp. 258 (1947), a Louisiana case; Caruthers v. Peoples Natural Gas Company, 38 Atl.2d 713 (1944), a Pennsylvania case; Babler v. Shell Pipe Line Corporation, 34 Fed. Supp. 10 (1940), a Missouri case.
(Hn 2) This Court must construe contracts as made by the parties, not make new ones for them. The agreements in this case provided for the laying of additional lines of pipe, together with payment therefor. Since the appellant objected to the entry of the appellee's crew, the court properly enjoined the objectors against interference with the work.
Consequently it follows that the decree of the trial court in this cause must be, and is, affirmed.
Affirmed and remanded.
McGehee, C.J., and Hall, Holmes, and Ethridge, JJ., concur.