ASHCOT, INC. *v.* TEXAS EASTERN TRANSMISSION CORPORATION

No. 41859          May 8, 1961          129 So. 2d 405

*Cox & Dunn,* Jackson, for appellant.

*Brunini, Everett, Grantham & Quin,* Vicksburg and Jackson; *Ray, Spivey & Cain,* Canton, for appellee.

LEE, P. J.

This is an interlocutory appeal by Ashcot, Inc. from a decree of the Chancery Court of Madison County which refused to dissolve a temporary injunction theretofore issued against it, without notice, at the instance of Texas Eastern Transmission Corporation.

The litigation arose out of these circumstances: C. L. Castle and Wife, by written instrument, dated and acknowledged March 26, 1955, and filed for record April 13, 1955, for a stated consideration, conveyed and warranted unto Texas Eastern Transmission Corporation "a right of way and easement to construct, lay, maintain, operate, alter, repair, remove, change the size of, and replace pipe lines and appurtenances thereto (including without limitation Corosion Control equipment) for the transportation of oil, gas, petroleum products or any other liquids, gases, or substances which can be transported through pipe lines, the Grantee to have the right to select, change, or alter the route under, upon, over and through lands which the undersigned owns or in which the undersigned has an interest, situated in the County of Madison, State of Mississippi, described as follows:

(Describing 40 acres.)

"By the terms of this agreement, Grantee has the *right to lay, construct,* maintain, operate, alter, repair, remove, change the size of, *and replace at anytime, or from time to time, one or more additional lines of pipe* and appurtenances thereto (including without limitation

Corrosion control equipment.) Provided, however, that for each additional line laid after the first line is laid hereunder, Grantee shall pay Grantor, his heirs or assigns, One Dollar per lineal rod of additional pipe line laid under, upon, over or through said hereinbefore described property.'' (Emphasis supplied). The other provisions are immaterial here.

Shortly thereafter, the grantee in the easement laid a pipeline which extended about 500 feet across the described land.

Subsequently, C. L. Castle and Wife, by warranty deed dated and acknowledged October 3, 1956, and filed for record October 4, 1956, conveyed and warranted to Ashcot, Inc. a large tract of land, including the forty acres described in the foregoing easement, but ''Subject to right of way over NE¼ SW¼, Section 12, Township 7 North, Range 1 East, less and except the lots contained in Lake Castle Subdivision, conveyed by C. L. Castle to Texas Eastern Transmission Corporation by instrument dated March 26, 1955, recorded in Book 61 at page 293.''

About 1959, the Texas Eastern representatives advised Ashcot of their intention to lay an additional pipeline across the property to the east of the existing line. Ashcot was opposed to such location and contended that the line should be laid within the thirty foot area where the existing line was situated. It finally expressed its willingness for the line to be laid provided it would be placed west of the existing line. The parties did not reach a common understanding; and at length, Texas Eastern sent its check in payment for the additional line, as provided for in the right-of-way agreement.

On August 12, 1960, Texas Eastern filed its bill of complaint in the chancery court to obtain a prohibitionary injunction against Ashcot for the purpose of preventing its interference in any way with the survey, laying, etc. of the additional pipeline as proposed in the bill. A copy of the right-of-way agreement was exhibited thereto. It

was alleged that the defendant had refused to permit the complainant to enter upon the premises for the purpose of making the construction. On the same date, the chancellor, by his fiat, ordered the issuance of a temporary injunction, in accordance with the prayer of the bill, upon the execution of bond in the sum of $1,000. Such bond was given and approved, and the injunction was issued. Upon service of the writ and accompanying process, the defendant filed its answer and motion to dissolve. Thereafter, the cause was heard on September 7, 1960, with the result stated in the first paragraph of this opinion.

Texas Eastern offered evidence to show that it was engaged in what it denominated as its Fifty Million Expansion in order that it might transport an additional 50,000,000 cubic feet of gas daily. To consummate this purpose, it was necessary to lay a second or additional pipeline, called a "loop line", parallel with and adjacent to its existing line on the property of Ashcot, Inc. The line would be laid approximately 25 feet east of the existing pipeline. The usual right-of-way for a pipeline is 75 feet in width, composed of the "spoil side" of approximately 25 feet, including the ditch, and a "working side", for construction, of approximately 50 feet. In accordance with safety and economic factors, there should be at least 25 feet between the existing line and the new one to be installed because dynamite should not be exploded closer than 25 feet to a "hot line", that is, a line filled with gas, and advantage should be taken of the work already done and the money spent for the existing line. All equipment, necessary for use in such construction, has to be utilized with the pipeline being to the left of such machinery. The company's plan for this additional pipeline was to use the space of 75 feet eastward from and parallel with the existing pipeline and running for a distance of slightly less than 500 feet for this installation. The lines could not be placed west of the existing line because the balance of the proposed line was on the

east side. Such a change would therefore not be feasible and would be too expensive.

The evidence for the defendant was to the effect that, while it objected to the laying of another line except within the right-of-way of the original line, it would acquiesce in the construction of the same on the west side. But it strenuously objected to the proposed location, contending that the value of the land to the east thereof would be destroyed because such land would be rendered unfit for development as building lots. The court excluded the proffered evidence as to the construction placed on the meaning of the instrument by the original grantors, holding that the instrument was plain and unambiguous.

The appellant contends here that the easement was indefinite both as to location and width; that the company had the right, however, to make it definite and certain; that it did so in 1955 when it located the first pipeline in the center of a 30 foot maintenance right-of-way; that the multiple pipelines, if laid, were to be laid under the 30 foot strip, for which $1 per lineal rod was to be paid; that the instrument does not give the company a second or additional right-of-way, or the right to select at any place it desires; and that the right of removal, replacing, change or alteration, provided for therein, is not involved. It further contends that, if any such power or authority for a second right-of-way exists, then such power and authority should be imputed to the appellant.

The appellee, on the other hand, contends that the instrument is definite in that it grants a right-of-way and easement to lay and construct pipelines—more than one —across the property that is described, and that it is required to pay $1 per rod for each additional line laid.

Right-of-way instruments, with substantially the same provisions as the one for consideration by the Court in this instance, have been construed by courts in other

jurisdictions. With one accord, they have held that such instruments were not vague and indefinite; and that the grantees therein had the right, under such agreements, to lay and construct additional pipelines. See Crawford v. Tennessee Gas Transmission Co., 250 S. W. 2d 237 (1952), from the Court of Civil Appeals of Texas; Baker v. Tennessee Gas Transmission Company, 250 S. W. 2d 566 (1952), from the Supreme Court of Tennessee; Sorrell v. Tennessee Gas Transmission Company, 314 S. W. 2d 193 (1958) and Texas Eastern Transmission Corporation v. Carman, 314 S. W. 2d 684 (1958), both from the Court of Appeals of Kentucky. In the Crawford case, supra, the controversy arose over the laying of the third pipeline. In the Carman case, supra, the right-of-way instrument was practically identical with the instrument involved here.

This Court, in Hamilton v. Transcontinental Gas Pipe Line Corporation, 236 Miss. 429, 110 So. 2d 612, had occasion to construe a right-of-way instrument practically the same in all essential respects as the one now before the Court. In that case, a pipeline was laid across the premises in 1950. In 1958, the corporation proposed to lay an additional line approximately parallel with, and about 47 feet south of, the existing line. The Hamiltons refused entry. The corporation sought and obtained an injunction against interference. This Court, in affirming the decree of the trial court, cited a number of cases. including the Crawford and Baker cases, supra, and held that: "The agreements in this case provided for the laying of additional lines of pipe, together with payment therefor", and that "This Court must construe contracts as made by the parties, not make new ones for them." Cf. also Tennessee Gas Transmission Company v. Bayles, 74 Fed. Supp. 258 (1947); a Louisiana case; Caruthers v. Peoples Natural Gas Company, 38 Atl. 2d 713 (1944), a Pennsylvania case; Babler v. Shell Pipe

Line Corporation, 34 Fed. Supp. 10 (1940), a Missouri case.

The appellant places great reliance on the case of Capital Electric Power Association v. Hinson, 226 Miss. 450, 84 So. 2d 409. The facts there were as follows: On August 29, 1938, the owner of the land in question granted an easement for a right-of-way for the appellant "to place, construct, operate, maintain, relocate and replace" its electric lines on such land, and clear out trees, etc. so as to prevent interference with the lines. There was no provision in the instrument for the subsequent placing of additional lines across the property. The company, in 1939, erected two poles and ran a line partly across the land to serve electricity to the residence on the property. In 1943, it erected another pole and ran the line to another residence on the property to serve it with electricity. The power line was located in that manner when the appellee and her family acquired the property and moved thereon in 1945. In June 1954, the owner of place north and east of the appellee's land applied for electric service. The power company proposed to extend the line already on the appellee's property 475 feet north and thence east 175 feet to the applicant's property. The company's crew cut the right-of-way in accordance with the stakes of the engineer, but the company found out about the appellee's objection before the poles and wire were placed in position. The Court, after citing various rules for the interpretation of easements, said: "Applying the foregoing rules to the facts of this case, we reach the conclusion that the purpose contemplated by Aldridge and appellant when the easement was granted was to supply electrical energy to the residence located on the subject land, and in order to accomplish this mutually desired purpose, it was necessary to construct a power line to such residence. This was done; the purpose of the easement was accomplished." In referring to the question as to whether or not

the owner of an easement should be permitted to make extensions whenever new conditions might arise, the opinion said: ''It would not be consistent with established law to permit the owner of the easement to make extensions of its right of way whenever new conditions or demands for its services require additional use of the servient lands; for to do so would subject the servient lands to potentially unlimited future burdens, the extent of which would never be fixed. Such unlimited right *was not expressly granted,* and on sound principle, we should not so interpret them to inhere in the general grant.'' (Emphasis supplied.)

In the case here, the unlimited right to lay additional lines was expressly granted; and that fact clearly distinguishes the principle in the Hinson case from the applicable principle in the present case.

■■ The language of the right-of-way instrument is clear and unambiguous. Consequently, parol evidence to explain the meaning of the same was not admissible.

■■ The appellant also contends that the temporary injunction should not have been issued without notice. Courts should, of course, be wary about ordering the issuance of injunctions without notice. This rule does not preclude such action when the exigencies of the situation require it. ■■ The right of the appellee to construct this additional pipeline was obvious. There was no reason either to interfere or impede this exercise of this right. The Court cannot say that the chancellor, under the circumstances of this case, abused his discretion in ordering the issuance of the temporary injunction.

From which it follows that the decree of the trial court must be affirmed and the cause remanded.

Affirmed and remanded.

*Kyle, Arrington, Ethridge* and *Rodgers, JJ.,* concur.