## SEBASTIAN RIVER DRAINAGE DISTRICT v. ANSIN, et al.
### No. 7120-E.
Circuit Court, Indian River County.

May 16, 1967.

Mitchell, Sharp & Mitchell, Vero Beach, for plaintiff.

Carlton, McCain, Brennan & McAliley, Fort Pierce, and Jackson & Clem, Vero Beach, for defendants.

D. C. SMITH, Circuit Judge.

*Final decree:* This cause comes on for entry of final decree after trial before the court. The plaintiff, through its second amended complaint, as amended, seeks the entry of a declaratory decree and injunctive relief. The defendants have filed their answers and amended counterclaims and also seek declaratory and injunctive relief. Briefs have been filed by the respective parties and they have been duly considered by the court.

It appears from the evidence that in 1927 the creation of a drainage district under the general drainage laws of the state of Florida was planned to consist of all of the land now lying within the boundaries of the complainant, Sebastian River Drainage District (hereinafter referred to as "the district"), plus all of the land owned by the defendants, Sidney D. Ansin, Ro-Ed Corporation, and Anwelt Corporation (hereinafter referred to as "the Ansin lands"), plus all of the land owned by the defendants, Hugh Corrigan and C. E. Corrigan, husband and wife, Hugh Corrigan III, and J. Pat Corrigan (hereinafter referred to as "the Corrigan lands"), and certain other lands.

Before the creation of the planned drainage district was completed, the "boom" had busted, the national crisis of 1929 followed and the whole plan was put on the shelf — because of the economic situation — until 1939, when the need for drainage was so badly felt that the subject was brought up again and at that time it was determined that it was not good business to take in all of the land that was originally contemplated to be included in the drainage district, and the land to be included within the district was cut from approximately 50,000 acres to approximately 10,000 acres. (Tr. 1965, vol. 1, pages 61 and 62, Ptf.'s exs. 11 and 14). In 1927 Graves Brothers Company was the owner of the great majority of the land which now comprises the district, plus the Ansin lands (approximately 10,000 acres) and plus the Corrigan lands (approximately 10,000 acres).

In 1939 when the district was reduced from approximately 50,000 acres to approximately 10,000 acres, the Ansin lands and Corrigan lands, then still owned by Graves Brothers Company, were left out of the district and the west boundary of the S ½ of section 26 and section 35, township 31 south, range 38 east, and the west boundary of sections 2, 11, 14, 23, 26 and 35, township 32 south, range 38 east, became the west boundary of the district. In the original plan of the district in 1927, a large canal identified as D was planned to be constructed along what in 1939 became the west boundary of the district and this large canal was to continue north along the west side of the N ½ of section 26 and section 23 and part of section 14, in township 31 south, range 38 east, and enter the Sebastian River in section 14 (Ptf.'s ex. 11). When the originally planned district was reduced in size in 1939, the planned construction of this large canal D was abandoned (Tr. 1965, vol. 1, pages 64 and 98).

Prior to 1939, a dike and a borrow ditch had been built along what became the west boundary of the district in 1939 and this borrow ditch is the ditch generally referred to in the pleadings and the evidence herein as Ditch D. This Ditch D extended northward along the common boundary line between the N ½ of section 26 and 27, township 31 south, range 38 east, and then northeasterly to the Sebastian Creek or Flood Plain (Ptf.'s ex. 14). Ditch D was not dug as a drainage ditch or canal but was dug as a result of borrowing dirt to build the dike (Tr. 1965. vol. 1, pages 63 and 64). Ditch D was in existence and the water therefrom flowed into the Sebastian Creek for some period of time while Graves Brothers Company owned the majority of the acreage now comprising the district and all of the acreage now known as the Ansin lands and the Corrigan lands (Tr. 1966, vol. 1, pages 126 and 127, and Ptf.'s ex. 14). During these years considerable acreage lying within the district had been developed into citrus groves and considerable acreage was used for other agricultural purposes, while the lands which are now the Ansin lands and the Corrigan lands were wild and unimproved, other than some agricultural use of a very limited acreage.

On December 29, 1942, the district executed an easement to Graves Brothers Company, granting to the company the right to drain surface waters from the lands which are now the Ansin lands and the Corrigan lands into Ditch D (Dfts.' ex. 8-A). Also on December 29, 1942, Graves Brothers Company conveyed the lands which are now the Ansin lands and the Corrigan lands by warranty deed to defendants Ansin's and Corrigan's predecessors in title and by a specific provision in said deed, conveyed to

the grantees the easement from the district to Graves Brothers Company (Dfts.' ex. 7-A).

Ditch D is not inside the district's dike, but is immediately to the west of the west dike of the district and is in fact not a part of the actual drainage facilities within the district, but is located upon lands belonging to the district (Ptf.'s ex. 18 and Dfts.' ex. 7-A). Ditch D, since the construction of the west dike of the district, has been used by the district to relieve water which might otherwise tend to accumulate immediately west of the dike in times of heavy rains and flooding, and thus tends to minimize a break-through of the west dike of the district and a resulting flooding of the lands within the district (Tr. 1965, vol. 1, pages 71 and 72, and Tr. 1966, vol. 1, pages 66, 74 and 75).

Mr. J. Hubert Graves, a supervisor of the district and president of Graves Brothers Company in 1942 when the district executed the easement above mentioned to Graves Brothers Company (Dfts.' ex. 8-A) and Graves Brothers Company conveyed the Ansin lands and Corrigan lands to the defendants' predecessors in title, testified —

> "The land was sold for the grazing of cattle, and the intent of the easement was the drainage of the water from the cattle pasture. And it was our understanding they were to connect up the ponds from the natural outlets into the easement canal there — I might say at this point, we never anticipated any highly intensive use of the land such as a grove being put in there or, certainly, the easement would not have been given — because if they are going to put in that kind of a development, we felt they should have gone back to the original Plan of Reclamation for the drainage district for the whole area there." (Tr. 1966, vol. 1, page 132)

Within the past several years, several hundred acres in the Ansin lands have been planted in citrus and additional plantings are presently contemplated. Lateral ditches are constructed in these citrus properties and then a large ditch or canal takes the water from these lateral ditches into Ditch D. In times of excessive rain and flooding, pumps are used to pump water from the Ansin lands into Ditch D. During the immediate past few years, improved pastures have been developed in the Corrigan lands and a large canal flowing into Ditch D has been dug and used to accelerate the flow of water from the Corrigan lands into Ditch D. The owners of the Ansin lands and the Corrigan lands and their predecessors in title have, on different occasions, cleaned, deepened and enlarged Ditch D.

During the immediate past few years the district has sought to enlarge and improve its drainage facilities and in this connection has acquired a Flood Plain along the course of the Sebastian Creek and into the Sebastian River (Ptf.'s ex. 14 and Dfts.' ex. 5). In periods of excessive rains and flood times, the drainage facilities of the district utilize the full capacity of the Flood Plain. The Flood Plain is the main facility or outlet to remove water from the district's drainage facilities into the Sebastian River. In periods of excessive rains and flood times, with the increased drainage from the Ansin lands (approximately 10,000 acres) and the increased drainage from the Corrigan lands (approximately 10,000 acres) into Ditch D, and in turn into the Flood Plain, downstream from the drainage facilities of the district, an overtaxing of the Flood Plain occurs and in turn water is not permitted to move out of the drainage facilities of the district through the Flood Plain and into the Sebastian River as readily and as rapidly as would otherwise occur, if the increased volume of water due to the increased drainage of the Ansin lands and the Corrigan lands through Ditch D had not been brought into existence.

Mr. E. E. Carter, engineer for the district, testified —

Q. Mr. Carter, what I am trying to get at, perhaps I am not framing the questions too well, is whether or not the amount of water flowing in Ditch D, into the cutoff canal and the right-of-way of the Sebastian River Drainage District and the flood plain, can have an effect upon the water level within the boundaries of the district?

A. Yes, it can; very definitely.

Q. Would you explain that, please?

A. Well, this gets to be kind of hairy, but we have a diversion dike down there that runs water down into the Sebastian River, that is taking the water at the moment, up until recently very slowly off the Corrigan and Ansin lands down there. That is, the rate of flow was slow, and it eased on down into the river and into the flood plain and away. And we came along in the last couple of years and instigated improvements of the Sebastian River Drainage District, under Public Law 566, and cut canals, Lateral C, and had put control structures in there, and acquired the flood plain down to the Sebastian Creek to insure ample discharge for the waters of the Sebastian River Drainage District, and to take the normal flow, easy flow, of water off the lands to the west. And as we come along and enlarge those facilities to the west and dump the water into the flood plain that wasn't designed to carry it, and certainly, it is going to raise the state of water in the flood plain to the extent that it will reflect back up and affect the canals in the Indian River and the Sebastian River Drainage District. In all probability it will damage the root system of the groves, and in some places flood the groves up there. It is as simple as that.

The canals from the west leading into Lateral D had very little or limited capacity and Lateral D could take care of it easy. And now we are loading up Lateral D, with the sum total of the capacity of Lateral D and, therefore, it is stacking up behind the dike and we run the dangerous risk of the dike breaking, and we run a considerable risk in raising the stage of the water in the Sebastian River until it impedes the flow of Lateral C and Lateral L canals. (Tr. 1966, pages 73-75)

The court finds from a consideration of all of the evidence that Ditch D was not dug or constructed to drain or for the purpose of draining the Ansin and Corrigan lands and that no one ever intended that it would be adequate for such purpose. Further, when the district executed the easement to Graves Brothers Company (Dfts.' ex. 8-A), the parties thereto did not intend that the privilege to drain surface waters contained in said easement would be adequate to drain the Ansin and Corrigan lands. If the Ansin and Corrigan lands are to be reasonably and adequately drained during periods of heavy rains and flood times, a large canal such as Canal D shown on the original plans of the district, when the district was being engineered to serve approximately 50,000 acres, or some other equivalent canal, which would enter the Sebastian River some reasonable distance downstream from the District's Flood Plain, will have to be constructed. (Ptf.'s ex. 11)

The plaintiff, through its second amended complaint and amendment thereto, seeks a declaratory decree determining —

(a) That the defendants do not have the right or privilege under the provisions of said easement (Dfts.' ex. 8-A) or warranty deed (Dfts.' ex. 7-A) to clean or enlarge Ditch D without the consent and approval of the complainant (district).

(b) That the defendants do not have the right or privilege under the provisions of said easement or warranty deed to dig lateral ditches across the right-of-way of the complainant drainage district and to use said lateral ditches for the drainage of their lands into Ditch D by means of natural flow of water.

(c) That the defendants do not have the right or privilege under the provisions of said easement and warranty deed to drain waters from their lands into Ditch D by forced flow or by the use of pumps.

(d) That the privilege under said easement to drain surface waters into Ditch D does not include the right or privilege to use Ditch D in the manner set out in (a), (b) and (c) above.

The court further finds from a consideration of all the evidence that the plaintiff has proved its case by a preponderance of the evidence, and that the equities herein are in favor of the plaintiff and against the defendants, and that the plaintiff is entitled to declaratory and injunctive relief, and that —

(A) The owners of the Ansin lands and the owners of the Corrigan lands have the right to reasonably clean and maintain Ditch D from time to time when necessary, as long as such cleaning shall be done in a manner so that Ditch D is not enlarged in any manner through such operation.

The district also has the right to clean and maintain Ditch D from time to time should it determine to do so, but it is not required to clean and maintain Ditch D unless it so determines for the district's benefit.

> Generally the owner of land subject to an easement of a nature which requires the maintenance of means for its enjoyment is not bound to keep such means in repair or to sustain any expense in maintaining them in a proper condition, in the absence of an agreement binding him to maintain or repair the easement. It is the duty and privilege of the dominant owner to prepare or construct the easement and make repairs for its use or enjoyment, since the easement itself belongs to him.

> 11 Fla. Jur., page 259, *Easements.* §35.

> As a general rule, in the absence of an agreement, the owner of land subject to an easement of a nature which requires the maintenance of means for its enjoyment is not bound to keep such means in repair or to sustain any expense in maintaining them in a proper condition. The duty and privilege of constructing an easement or of making repairs for its use or enjoyment rests upon the owner of the dominant tenement, since the easement itself is his particular property. It has been held that a failure on his part for an unreasonable length of time to make repairs amounts to an abandonment of the easement. He is not bound, however, to repair and maintain for the benefit of the servient tenement. The dominant owner has the right of access to make repairs and may enter upon the servient estate for this purpose. He may not, however, inflict any unnecessary injury.

> 17 Am. Jur. 1003, *Easements.* §108.
> 169 A.L.R. 1147-1148

(B) The owners of the Ansin lands and the owners of the Corrigan lands do not have the right to enlarge Ditch D by widening, deepening or enlarging it in any manner.

> The cited case illustrates a general principle governing all easements, whether acquired by user, express grant, dedication, or by implication from the circumstances of a particular transaction that

the burden of a right of way upon the servient estate must not be increased to any greater extent than reasonably necessary and contemplated at the time of initial acquisition. Compare Brooks-Garrison Hotel Corp. v. Sara Inv. Co., Fla., 61 So.2d 913. "Every easement carries with it by implication the right, sometimes called a secondary easement, of doing what is reasonably necessary for the full enjoyment of the easement itself * * * [but] the right is limited and must be exercised in such reasonable manner as *not injuriously to increase the burden upon the servient tenement* * * * " (Emphasis supplied.) 28 C.J.S., Easements, §76(b), page 754. "According to the present state of authorities, it appears that the grantee of a right of way is not entitled to increase the legitimate burden. * * * And the legal extent of the right * * * must, it seems, be ascertained from the intention of the parties *at the time when the right was created.*" (Emphasis supplied.)  Gale on Easements, 12th Ed., pp. 324-325.

> Crutchfield v. F. A. Sebring Realty Co., Fla. 1954,
> 69 So.2d 328-330.

The appellant was not granted an unlimited right to use the lands of the grantor; and what we here hold is to permit such reasonable use to be made of the servient lands as to accomplish that which the parties contemplated at the time of the grant, as evidenced by what the owner of the easement did pursuant to the grant within a reasonable time thereafter, with the acquiescence of the landowner. It would not be consistent with established law to permit the owner of the easement to make extensions of its right of way whenever new conditions or demands for its services require additional use of the servient lands; for to do so would subject the servient lands to potentially unlimited future burdens, the extent of which would never be fixed. Such unlimited right was not expressly granted, and on sound principle, we should not so interpret them to inhere in the general grant.

> Capital Electric Power Association v. Hinson,
> Supreme Court of Mississippi, 1956, 84 So.2d
> 409-413.

(C)  The owers of the Ansin lands and the owners of the Corrigan lands have the right to dig and construct such ditches from their lands into Ditch D as are reasonably necessary to drain surface waters from their lands as long as such ditches are not dug deeper than is reasonably necessary in order to drain the water which from time to time accumulates in the various ponds or low spots on said lands from such ponds or low spots into Ditch D.

> Every easement carries with it by implication the right, sometimes called a secondary easement, of doing whatever is reasonably necessary for the full enjoyment of the easement itself. However, the extent of an implied or secondary easement depends upon the purpose and extent of the grant of the primary easement. The right is limited, and must be exercised in such reasonable manner as not injuriously to increase the burden upon the servient tenement; and no presump-

tion of an incidental grant can be entertained where it conflicts with the express terms of the grant or where the thing expressly granted contains within itself adequate means by which it reasonably may be enjoyed. Moreover, nothing passes by implication as incident to a grant except what is reasonably necessary to its fair injoyment. What is reasonably necessary for the full enjoyment of the easement will be determined by a construction of the language of the express grant considered in the light of the surrounding circumstances, including the condition and character of the servient tenement and the requirements of the grantee.

28 C.J.S., page 754, *Easements*, §76(b).

(D) The owners of the Ansin lands and the owners of the Corrigan lands have a right under the easements (Dfts.' ex. 8-A) and the warranty deed (Dfts.' ex. 7-A) to drain surface waters into Ditch D.

(E) Nothing other than surface waters (except some water from several artesian wells of an infinitesimal amount and of no consequence when viewed in light of the overall problem involved) has been drained from the Ansin lands and the Corrigan lands into Ditch D.

(F) The owners of the Ansin lands and the owners of the Corrigan lands do not have the right to force drain through use of pumps any water from their lands into Ditch D or to do any act or acts whatsoever at any place on their lands which forces or accelerates the flow of water from their lands into Ditch D faster than it would flow through ditches into Ditch D without such act or acts being done or such force being applied or such acceleration being brought about or created.

The evidence shows that pumping water from the Ansin lands and the Corrigan lands into Ditch D during periods of heavy rains and flood times overtaxes the capacity of Ditch D and causes water to 'stack up' in Ditch D and against the district's west dike, creating a potential 'break-through' and, in the event a 'break-through' should occur, causing probable serious and irreparable damage to some 8,000 acres of citrus acreage within the district (Tr. 1965, vol. 1, page 71) and, in addition, such pumping during periods of heavy rains and flood times causes the acceleration of large volumes of water through Ditch D to the district's Flood Plain and makes it impossible for the waters from the district's drainage facilities to move through the district's Flood Plain as rapidly as it would otherwise do if such large volumes of water were not accelerated through Ditch D and into the Flood Plain, and in such manner causing probable serious and irreparable damage to large citrus acreages within

the district through holding excess water in the district during such periods of time (Tr. 1966, vol. 1, pages 74 and 75).

"Easements once granted and fixed are not subject to the whims of either the dominant or servient owners of the land and can only be changed by the mutual consent of the parties."

> Florida Power Corporation v. Hicks, Fla. App. 1963, 156 So.2d 408-410, and Capital Electric Power Association v. Hinson, supra.

(G) Under the easement (Dfts.' ex. 8-A) and the warranty deed (Dfts.' ex. 7-A), the draining of surface waters from the Ansin lands and the Corrigan lands into Ditch D does not constitute draining water in, upon, over or under any lands situated within the district, and the owners of the Ansin lands and the owners of the Corrigan lands do not have the right to drain any waters from their lands or any other lands in, upon, over, under or through any other lands situated within the district, unless with the express consent in writing of the board of supervisors of the district first had and obtained (Dfts.' ex. 7-A).

Upon consideration, it is ordered, adjudged and decreed —

(1) That the defendants, Sidney D. Ansin, Ro-Ed Corporation, a Florida corporation, and Anwelt Corporation, a Massachusetts corporation, Hugh Corrigan and C. E. Corrigan, husband and wife, Hugh Corrigan III and J. Pat Corrigan, have the right to reasonably clean and maintain Ditch D from time to time when necessary, as long as such cleaning shall be done in a manner so that Ditch D is not enlarged in any manner through such operation.

The Sebastian River Drainage District also has the right to clean and maintain Ditch D from time to time should it determine to do so, but it is not required to clean and maintain Ditch D unless it so determines for the district's benefit.

(2) That the defendants named in paragraph (1) above do not have the right to enlarge Ditch D by widening, deepening or enlarging it in any manner, and that said defendants, their officers, agents, servants and employees, be and they are hereby restrained and enjoined from in any way widening, deepening or enlarging Ditch D in any manner whatsoever, unless with the express consent in writing of the board of supervisors of the Sebastian River Drainage District first had and obtained, or until further order of court.

(3) That the defendants named in paragraph (1) have the right to dig and construct such ditches from their lands into Ditch D as are reasonably necessary to drain surface waters from their lands, as long as such ditches are not dug any deeper than is reasonably necessary in order to drain the water which from time to time accumulates in the various ponds or low spots on said lands from such ponds or low spots into Ditch D, and that said defendants, their officers, agents, servants and employees be and they are hereby restrained and enjoined from digging and constructing any ditch or ditches from their lands into Ditch D any deeper than is reasonably necessary in order to drain the water which from time to time accumulates in the various ponds and low spots on said lands from such ponds and low spots into Ditch D, unless with the express consent in writing of the board of supervisors of the Sebastian River Drainage District first had and obtained, or until further order of court.

(4) That the defendants named in paragraph (1) have a right under that certain easement executed by Sebastian River Drainage District to Graves Brothers Company, dated December 29, 1942, and filed and recorded in deed book 36, on page 182, public records of Indian River County (Dfts.' ex. 8-A), and that certain warranty deed executed by Graves Brothers Company to Alto Adams and Irlo Bronson, dated December 29, 1942, and filed and recorded in deed book 34, on page 527, public records of Indian River County (Dfts.' ex. 7-A), to drain surface waters from their lands into Ditch D.

(5) That nothing other than surface waters (except some water from several artesian wells of an infinitesimal amount and of no consequence when viewed in the light of the overall problem involved) has been drained from the Ansin lands and the Corrigan lands into Ditch D.

(6) That the defendants do not have the right to force drain through use of pumps any water from their lands into Ditch D or to do any act or acts whatsoever at any place on their lands which forces or accelerates the flow of water from their lands into Ditch D faster than it would flow through ditches into Ditch D without such act or acts being done or such force being applied or such acceleration being brought about or created, and that said defendants, their officers, agents, servants and employees be and they are hereby restrained and enjoined from force draining through the use of pumps any waters from their lands into Ditch D or from doing any other act or acts whatsoever at any place on their lands which forces or accelerates the flow of water from their lands into Ditch D faster than it would flow through ditches into

88

Ditch D without such pumping or such act or acts being done or such force being applied or such acceleration being brought about or created, unless with the express consent in writing of the board of supervisors of the Sebastian River Drainage District first had and obtained, or until further order of court.

(7) That under the easement and the warranty deed specifically described in paragraph (4) above, the draining of surface waters from the Ansin lands and the Corrigan lands into Ditch D does not constitute draining water in, upon, over or under any lands situated within Sebastian River Drainage District, and the defendants named in paragraph (1) above do not have the right to drain any waters from their lands or from any other lands in, upon, over, under or through any land situated within the district unless with the express consent in writing of the board of supervisors of the Sebastian River Drainage District first had and obtained.

(8) That any relief prayed for by the plaintiff or by any counterclaimant not hereinabove granted is denied.

(9) That the plaintiff and the defendants, and each of them, respectively, shall bear the costs incurred by them herein.

(10) That the court reserves jurisdiction of this cause for any and all purposes in connection with the enforcement of this decree.