# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-01837-SCT
## CONSOLIDATED WITH
## NO. 2002-CA-01838-SCT AND
## NO. 2002-CA-01839-SCT

*TUPELO REDEVELOPMENT AGENCY*

**v.**

*SUE W. ABERNATHY, G. L. WILEMON, JR., JOANN*
*W. WESTMORELAND, DONALD BRETT BETHAY*
*AND BARRY LANE BETHAY*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/2/2002 |
| TRIAL JUDGE: | HON. WILLIAM R. LAMB |
| COURT FROM WHICH APPEALED: | LEE COUNTY SPECIAL COURT OF EMINENT DOMAIN |
| ATTORNEYS FOR APPELLANT: | MARTHA BOST STEGALL |
| | GUY W. MITCHELL, III |
| ATTORNEYS FOR APPELLEES: | DEWITT T. HICKS, JR. |
| | P. NELSON SMITH, JR. |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART - 04/07/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., GRAVES AND DICKINSON, JJ.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1.     These consolidated appeals arise from eminent domain actions brought by the Tupelo

Redevelopment Agency (hereinafter "TRA") against Sue W. Abernathy, G.L. Wilemon, Jr.,

Joann W. Westmoreland, Donald B. Bethay and Barry L. Bethay (collectively "Landowners").[1]

After reaching an initial settlement, this matter was subsequently brought before the Lee County Special Court of Eminent Domain which ruled that the subject property was to be sold at a price determined by a court-ordered appraisal and that TRA was to pay interest from and after February 1, 2002, until the closing date. It is from these rulings that both sides appeal.

## FACTS AND PROCEDURAL HISTORY

¶2. TRA is an urban renewal agency of the City of Tupelo, Mississippi, which was created to renew and redevelop a part of downtown Tupelo. Specifically, the part of downtown Tupelo which was slated for renewal was known as the "old fairgrounds area." (hereinafter "redevelopment area"). From 1999 thru 2000, TRA filed five condemnation suits against the Landowners who each owned a separate piece of real property within a redevelopment area. Only three of those lawsuits, involving a 2.0 acre unimproved tract (Parcel No. 17), a 2.7 acre unimproved tract (Parcel No. 14), and a ½ acre improved tract (Parcel No. 14.01) are at issue in this appeal. The Landowners denied that TRA's taking rose to the level of a public necessity. After the cases were removed to the United States District Court, on July 21, 2000, the district court remanded them to state court.

¶3. On October 29, 2001, TRA and the Landowners reached a settlement which provided in pertinent part that the purchase price for each tract of land shall be determined by an appraisal to be performed plus twenty percent (20%) of the appraised value for Parcels No. 14 and 17 and plus eighteen percent (18%) of the appraised value for Parcel No. 14.01. Also, the

---

[1] Initially TRA filed five condemnation suits against each of the Landowners who each owned a piece of real property within the development area. Only three of those lawsuits are at issue in these consolidated appeals.

settlement agreement stated that the transaction would "close" on or before November 1, 2001, or on such date as agreed to in writing by the parties.

¶4. While the settlement statement contained a November 1, 2001, closing date, the document was not executed by all of the Landowners until dates ranging from November 1 thru 8, 2001. The agreement was subsequently approved by TRA's board on November 8, 2001. On November 20, 2001, Tupelo's City Council approved the agreement.

¶5. Prior to the settlement negotiations and execution of the settlement agreement, TRA spent nearly $7 million making improvements to the redevelopment area. These improvements consisted of the construction of a new City Hall and infrastructure improvements, including improvements to streets, sidewalks, curbs, water lines, sewer lines, and underground electrical lines.

¶6. Pursuant to the settlement agreement, an appraisal was to be conducted on the three condemned parcels. On November 27, 2001, the first appraisal included the valuation consideration of the improvements made by TRA and valued the three properties together at $925,000 (hereinafter "Appraisal 1"). TRA claimed error and brought this issue to the attention of the appraiser and requested a second appraisal excluding the valuation consideration of the improvements made. TRA informed the appraiser not to take into consideration any sales, listings, pending, or options concerning other real property in the redevelopment area which had previously been acquired by TRA through condemnation or negotiated purchase. The second appraisal, dated January 24, 2002, valued the three properties at $330,000 (hereinafter "Appraisal 2"). On January 17, 2002, some 7 days before receiving Appraisal 2, the Landowners filed a Motion to Enforce seeking to bind TRA to the settlement

agreement based upon Appraisal 1. On January 25, 2002, TRA responded to the motion. Following a hearing on this matter, the trial court entered an order denying the Landowners' motion, finding that they "did not expect fair market value as of November 27, 2001 including the value of TRA's improvements." In its order, the court noted that the issue of whether to enforce the settlement based upon Appraisal 2 was not before it and recommended TRA file a Motion to Enforce within twenty days of the court's order. Thus, on July 25, 2002, TRA filed a Motion to Enforce the settlement based upon Appraisal 2. On July 26, 2002, the Landowners filed a Motion for Reconsideration of the denial of its motion to enforce based upon Appraisal 1.

¶7.    The Lee County Special Court of Eminent Domain held a hearing on both TRA's Motion to Enforce as to Appraisal 2 and on the Landowners' Motion for Reconsideration of the denial of enforcement as to Appraisal 1. On October 7, 2002, the court set aside both appraisals and ordered that a third appraisal be conducted by TRA with an effective date of November 27, 2001 (the date of the first apprisal)(hereinafter "Appraisal 3").[2] The court determined that a reasonable closing date would have been February 1, 2002, and ordered TRA to pay interest at a rate of 8% from and after February 1, 2002, until closing on the value determined by the appraisers in the third appraisal, plus the premiums of 18% and 20% as provided in the settlement agreement.

¶8.    The purchase of the real property in question occurred on December 20, 2002. At the closing TRA paid the court-ordered interest from February 1, 2002, through December 20,

---

[2] The third appraisal was actually conducted on November 22, 2002, and valued the properties collectively at $653,000.

2002, in the amount of $56,350.08.  TRA timely appeals and asserts as error the trial court's assessment of interest.  The Landowners complain of the following: (i) the trial court's refusal to enforce the agreement based upon Appraisal 1; (ii) the trial court's admission of the testimony of the appraiser as to certain unauthorized acts; and (iii) the trial court's refusal to award attorney's fees to the Landowners for breach of the settlement agreement.

## DISCUSSION

### I.      Whether the trial court erred in refusing to enforce Appraisal 1.

¶9.      The Landowners argue that Appraisal 1 was the correct and proper appraisal because it was made after a meeting of all parties to the litigation and the parameters for that appraisal were agreed upon by all parties.  The Landowners contend that when the amount of $925,000 was given as the result of Appraisal 1, Christopher Rogers , then chairman of TRA, acted unilaterally to have a second appraisal done to greatly reduce the amount contained in Appraisal 1.  The Landowners argue that Rogers improperly attempted to modify the settlement agreement but lacked the authority to bind TRA.  Further, the Landowners contend that Appraisal 2 should have never occurred and was based on illegal instructions given by Rogers. TRA disagrees and argues that if the trial court had enforced the settlement agreement based upon Appraisal 1, the Landowners would have been given an improper and unintended windfall through increased property value occasioned by TRA's own actions and expenditures.   TRA contends that such a windfall was not the essence of it's settlement agreement with the Landowners.   Further, TRA urges  this Court to consider the rationale of the trial court in

denying the Landowners' Motion to Enforce and Motion for Reconsideration based upon

Appraisal 1. In its October 2, 2002, order, the trial court ruled:

> The evidence is in direct conflict as to whether or not a special assumption to disregard the improvements of TRA should be considered in Appraisal 1. Where the terms of a contract are less than clear, the contract is to be interpreted in a reasonable manner. *Lehman-Roberts v. Hwy. Comm. Of Miss.,* 673 So.2d 742, 744 (Miss. 1996). TRA's evidence is, at least, equally compelling that the Landowners did not expect fair market value as of November 27, 2001 including the value of TRA's improvements. The Court takes judicial notice that the law of eminent domain does not allow compensation for benefits of future developments by the governmental agency exercising the power of condemnation.

¶10. With regard to the Landowners' allegations that Rogers acted without the authority of

the TRA to have Appraisal 2 performed, the trial court ruled:

> The Court finds that the actions of Rogers in instructing the appraisers concerning the special assumption to be utilized by them in arriving at the values of the three tracts of property, i.e., not to consider the effect on the value resulting from improvements made by TRA, were authorized by the TRA and ratification of authorization is contained in the minutes of TRA's meeting of June 20, 2004.

¶11. Paragraph 8 of the settlement agreement provides:

> TRA will pay for an appraisal by appraiser Steve Holcombe and appraiser Jerry Bristow for Parcel No. 14, Parcel No. 14.01 and Parcel No. 17 (Exhibits C through E) and to cause said appraisers to issue a restricted report establishing the value of each one of the three tracts of land in a specific amount. For the purposes of appraising Parcel No. 14, the acreage will be deemed to be 2.7 acres.

¶12. In denying the Landowners' Motion to Enforce, the trial court ruled that the terms of

the settlement agreement were "less than clear." Where terms of a contract are ambiguous,

the contract will be interpreted in a reasonable manner. *Lehman-Roberts v. Hwy. Comm. of*

*Miss.,* 673 So.2d 742, 744 (Miss. 1996). We held that it is a question of law for the court to

determine whether a contract is ambiguous. *Royer Homes of Miss., Inc v. Chandeleur Homes, Inc.* 857 So.2d 748, 751 (Miss. 2003) (citing *Miss. Transp. Comm'n v. Ronald Adams Contractor, Inc.,* 753 So.2d 1077, 1087 (Miss. 2000); *Universal Underwriters Ins. Co. v. Ford,* 734 So.2d 173, 176 (Miss. 1999); *IP Timberlands Operating Co. v. Denmiss Corp.,* 726 So.2d 96, 106 (Miss. 1998)). In the event of an ambiguity, the subsequent interpretation presents a question of fact for the trier of fact which we review under a substantial evidence/manifest error standard. *Clark v. State Farm Mut. Auto. Ins. Co.,* 725 So.2d 779, 781 (Miss. 1998); *Lamb Constr. Co. v. Town of Renova,* 573 So.2d 1378, 1383 (Miss. 1990). The primary purpose of all contract construction principles and methods is to determine and record the intent of the contracting parties. *Kight v. Shepard Bldg. Supply, Inc.,* 537 So.2d 1355, 1358 (Miss. 1989). In contract construction cases, the court's focus is upon the objective fact – the language of the agreement. A reviewing court is only concerned with what the contracting parties have said to each other, not some secret thought of one not communicated to the other. *Turner v. Terry,* 799 So.2d 25, 32 (Miss. 2001). A reviewing court should seek the legal purpose and intent of the parties from an objective reading of the words employed in the contract. The reviewing court is not at liberty to infer intent contrary to that emanating from the text at issue. *Cooper v. Crabb,* 587 So.2d 236, 239-41 (Miss. 1991).

¶13. We have set out a three-tiered approach to contract interpretation. *Pursue Energy Corp. v. Perkins,* 558 So.2d 349, 351-53 (Miss. 1990). First, the "four corners" test is applied, wherein the reviewing court looks to the language that the parties used in expressing

their agreement. *Id.* at 352 (citing *Pfisterer v. Noble,* 320 So.2d 383, 384 (Miss. 1975)). Second, if the court is unable to translate a clear understanding of the parties' intent, the court should apply the discretionary "canons" of contract construction. *Id.* at 352. Finally, if the contract continues to evade clarity as to the parties' intent, the court should consider extrinsic or parol evidence. *Id.* It is only when the review of a contract reaches this point that prior negotiations, agreements and conversations might be considered in determining the parties' intentions in the construction of the contract.

¶14. In the facts before us, the settlement agreement is completely silent as to whether or not the appraisers were to disregard the improvements of TRA in reaching an appraisal value for Appraisal 1. However, from this silence, we are left with only one reasonable interpretation of this critical issue. The trial court determined that it was the parties' intent to assess market value of the subject property as of November 27, 2001, excluding the value of TRA's improvements. We hold that the trial court was correct in reaching this conclusion. Where a contract is silent as to one of its terms, the court is not bound to adopt a construction which is not compelled by the instrument and which no man in his right mind would have agreed to. *Frazier v. Northeast Miss. Shopping Ctr., Inc.,* 458 So.2d 1051, 1054 (Miss. 1984); *Hoerner v. First Nat'l Bank of Jackson,* 254 So.2d 754, 758-59 (Miss. 1972). TRA provides absolutely no indication that it would ever have expressly agreed to a contract which provided the value of the subject property would include the valuation of improvements which TRA made. We hold that the trial court's determination that it was not the parties' intent to include the value of TRA's improvements in assessing a value for the subject property is supported by substantial evidence and will be allowed to stand.

8

¶15.    The trial court made a number of findings in its July 19, 2002, and October 2, 2002, orders which denied the Landowners' Motion to Enforce Appraisal 1 as well as their Motion to Reconsider, respectively.    The terms "market value" and "current value" have been utilized by the parties in their briefs in attempting to describe the essence of their agreement. However, the trial court found that these terms were not used in the original letter of agreement, the minutes of the TRA and the City, or the settlement agreement itself.    That is, the settlement agreement simply stated that the purchase price would be determined by appraisals of the subject properties.    The trial court observed a conflict in evidence as to whether or not a special assumption to disregard the improvements made by TRA should be considered.    It held that after a reasonable interpretation of the settlement agreement, the considerations of TRA's improvements should be excluded.    The trial court took judicial notice that the law of eminent domain does not allow compensation for benefits of future developments by the governmental agency exercising the power of condemnation.    The trial court held that the Landowners failed to prove by a preponderance of the evidence that Rogers requested Appraisal 2 in an attempt to modify the terms of the settlement agreement.    The court determined that Rogers' instructions to the appraisers not to consider the improvements made by TRA in determining the value of the Landowners' property were made in writing.    The trial court noted that the settlement agreement provided that TRA "will cause said appraisers to issue a 'restricted report.'" The trial court noted that the settlement agreement failed to define "restricted report," but held that this provision permitted TRA to meet with the appraisers with or without the Landowners.

9

¶16. Also, in its October 2, 2002, order, the trial court refused to enforce Appraisal 2 which valued the subject property collectively at $330,000. The court found that from the testimony presented by the appraisers, in arriving at the value contained in Appraisal 2, the appraisers failed to consider the fact that the City of Tupelo had adopted a Master Plan in 1994 affecting the property sought to be condemned and had approved a bond resolution authorizing the issuance of certain urban renewal bonds. The trial court determined that equity demanded yet another valuation of the subject property.

¶17. The Landowners argue that the instant action is consistent with our ruling in *Paulk v. Housing Auth. of City of Tupelo,* 204 So.2d 153 (Miss. 1967), where we held that a landowner was entitled to fair market value of his property on the date the condemnation proceedings were filed, including any enhancements in value resulting from resolutions of the municipal housing authority's renewal project area. *Id.* at 154. In *Paulk,* the housing authority rezoned and restricted the subject property to light industrial and commercial use prior to the condemnation proceedings. *Id.* *Paulk* is distinguishable from the instant action in that the subject property in the case sub judice does not base valuation upon zoning regulations. TRA argues that it was never the parties' intent to have the subject property valuated at a price which included peripheral improvements TRA made to the renewal project.

¶18. The trial judge carefully considered all the facts before him prior to making his findings of fact and conclusions of law. We hold that the trial court's order thoroughly sets forth the evidence presented and the basis for his rulings. The Landowners offer non-persuasive arguments to suggest that the eminent domain judge lacked a sufficient basis for his decisions. It follows that the trial court was correct in refusing to enforce Appraisal 1 and Appraisal 2.

10

Considering the parties have already closed the transaction based upon Appraisal 3, the transaction will stand consistent with the remainder of this opinion.

**II.      Whether the trial court erred in ruling that TRA must pay interest from and after February 1, 2002.**

¶19.    In its final order and judgment, the trial court ruled that "if all issues had been resolved by the parties, a reasonable closing date would have been February 1, 2002." TRA contends that the trial court erred in ordering it to pay interest at a rate of 8% from and after February 1, 2002,  until closing on the value determined by Appraisal 3, plus the premiums of 18% and 20% as provided in the settlement agreement. Further, the closing statement lists,  inter alia, the court-ordered   interest at an amount of $56,350.08.[3]     The Landowners argue that the interest is due as a result of TRA's failure to consummate the settlement. The Landowners contend that they were ready and willing to close in January 2002 since the deeds and easements were executed and available. The Landowners maintain that but for TRA's purposeful delay, the closing would have been realized prior to February 1, 2002. To the contrary, TRA argues that it did not unreasonably delay the closing. TRA contends that the delay in closing resulted from the appraisers initially including in Appraisal 1, TRA's

---

[3] Contained in the Closing Statement is the following: "The parties hereto acknowledge that the issue of the assessment of interest has been appealed by TRA and may be reversed on appeal and required to be repaid to TRA.  TRA does not waive any issues perfected by its appeal concerning the interest."

improvements in the redevelopment area, giving the Landowners an unfair windfall in the value of the subject property.

¶20. Miss. Code Ann. § 75-17-7 (Rev. 2000) states the following with regards to prejudgment interest:

> All judgments or decrees founded on any sale or contract shall bear interest at the same rate as the contract evidencing the debt on which the judgment or decree was rendered. All other judgments or decrees shall bear interest at a per annum rate set by the judge hearing the complaint from a date determined by such judge to be fair but in no event prior to the filing of the complaint.

*Id.* The settlement agreement did not provide for a rate or award of interest on the amount to be paid by TRA. Thus, the first part of § 75-17-7 is inapplicable to these facts. This Court has interpreted the statute as follows:

> An award of prejudgment interest rests in the discretion of the awarding judge. Under Mississippi law, prejudgment interest may be allowed in cases where the amount due is liquidated when the claim is originally made or where the denial of a claim is frivolous or in bad faith. **No award of prejudgment interest may rationally be made where the principal amount has not been fixed prior to judgment.**

*Coho Resources, Inc. v. McCarthy,* 829 So.2d 1, 19-20 (Miss. 2002) (quoting *Warwick v. Matheney,* 603 So.2d 330, 342 (Miss. 1992) (internal citations omitted & emphasis added). Thus, where this is no provision in the parties' contract concerning payment of interest, the law in Mississippi regarding an award of prejudgment interest is clear. Such an award is discretionary with the trial judge but is available only if the money due was liquidated and there was no legitimate dispute that the money was owed. *See* *Simpson v. State Farm Fire & Cas. Co.,* 564 So.2d 1374, 1381 (Miss. 1990); *Grace v. Littiz Mut. Ins. Co.,* 257 So.2d 217, 225 (Miss. 1972). The Fifth Circuit has ruled that under Mississippi law, a plaintiff is entitled to

prejudgment interest when the amount owed is liquidated and the denial of the claim was in bad faith. *CFC Fabrication, Inc. v. Dunn Constr. Co.,* 917 F.2d 1385, 1391 (5th Cir. 1990).

¶21.    In the instant action, TRA never denied that a purchase price was owed to the Landowners.    The ultimate issue presented in this case is which appraisal controlled the valuation of the subject property.    According to the settlement agreement, the amount to be paid by TRA was to be determined by a future appraisal report.    The trial court properly rejected Appraisal 1 for reasons discussed above.    The trial court properly rejected Appraisal 2 because it did not take into consideration the fact that the City of Tupelo passed a Master Plan in 1994 affecting the property sought to be condemned and had approved a bond resolution authorizing the issuance of certain urban renewal bonds.    Instead, the trial court ordered    TRA to conduct Appraisal 3, excluding all expenditures by TRA resulting in improvements to the realty in connection with the urban renewal project, but including the financial impact of the urban renewal bonds.    The trial court issued its judgment on October 7, 2002, ordering TRA to pay interest at a rate of 8% in addition to the 18% and 20% premiums provided for in the settlement agreement.    Appraisal 3 was dated November 22, 2002, and the transaction closed less than a month later.    Thus, the amount to be paid by TRA (plus the premiums) was not and could not have been known before November 22, 2002,  and, therefore, was not liquidated prior to the October 7, 2002 judgment. In light of *McCarthy* and *Warwick,* we hold that the trial court's award of prejudgment interest in this case constitutes error.

¶22.    Per the settlement agreement, this transaction was supposed to close on or before November 1, 2001.  In its final judgment and order, the trial court ruled that if all issues had

13

been resolved by the parties, a reasonable closing date would have been February 1, 2002. We agree with the trial court that had all issues in the instant action been resolved, February 1, 2002, have been a reasonable closing date. However, the record lacks sufficient proof to suggest that the delay in closing was due to bad faith by TRA. Instead, the delay in closing was due to the errors contained in Appraisal 1 and Appraisal 2 which would be attributable to the appraisers, not TRA. Thus, when the mistakes were brought to light, TRA acted expeditiously to resolve them pursuant to the parties' intent of the settlement agreement. In attempting to finalize the deal, TRA's motive was accuracy, not hesitation. TRA had a legal, pecuniary interest in making sure that the appraisal which was to govern the transaction was accurate both in form and substance. For this, we cannot say that TRA should be penalized for the errors contained in Appraisal 1 and Appraisal 2.

¶23. Further, the record is completely devoid of a request by the Landowners for prejudgment interest. This Court has repeatedly held that for such to be awarded, prejudgment interest must be specifically requested from a date certain; a general request for relief will not support an award of prejudgment interest. *Thompson Mach. Commerce Corp. v. Wallace,* 687 So.2d 149, 152 (Miss. 1997); *Wirtz v. Switzer,* 586 So.2d 775, 785 (Miss. 1991); *Simpson v. State Farm Fire & Cas. Co.,* 564 So.2d at 1380-81. Under these circumstances, we hold that the trial court erred in awarding unsolicited prejudgment interest on an unliquidated damages claim. According to the closing statement, TRA rendered to the Landowners prejudgment interest in the amount of $56,350.08. On this issue, we reverse and render a judgment against the Landowners and in favor of TRA in the amount of $56,350.08, the amount TRA paid at closing.

14

**III. Whether the trial court erred in admitting testimony of TRA's chairman.**

¶24. The Landowners claim that the trial court erred in admitting the testimony of Chris Rogers regarding his authority to rescind the settlement agreement or to postpone the closing of the transaction until certain acts were performed. During the September 20, 2002, hearing, the following exchange took place between Rogers and counsel for the Landowners:

> Q. (Hicks): Have you had any minutes authorizing you to rescind the settlement agreement?
>
> A. (Rogers): No.
>
> Q. (Hicks): Have you had any minutes authorizing you to postpone the closing of the settlement agreement until certain acts are done?
>
> A. (Rogers): I cannot answer that question. I don't know if we have got that in the minutes or not.
>
> Q. (Hicks): That would be the place to find it, though, wouldn't it?
>
> A. (Rogers): That would be a place to find it. Sure would.
>
>                 * * * * * * * *
>
> Q. (Hicks): Have you been given authority in [the] minutes to delay this closing of the purchase of the . . . . . . property for any purpose?
>
> A. (Rogers): I cannot tell you if I have in the minutes or not. I have not read all the minutes, and I cannot recall.

¶25. The Landowners argue that a municipality and its agencies and bodies can act only through their minutes. *Rawls Springs Utility Dist. v. Novak,* 765 So.2d 1288, 1291 (Miss. 2000); *Nichols v. Patterson,* 678 So.2d 673, 676-77 (Miss. 1996). A county or municipality can only act through its minutes, and those official actions must be evidenced by its minutes.

15

*Smith v. Board of Sup'rs of Tallahatchie County,* 124 Miss. 36, 41, 86 So. 707, 709 ( 1920).

Upon this background of jurisprudence, the Landowners contend that the testimony offered by Rogers contradicted the minutes kept by TRA. Thus, the Landowners contend that Rogers' testimony should not have been considered by the trial court.

¶26. Our well-settled standard of review for the admission or exclusion of evidence is an abuse of discretion. *Ware v. Entergy Miss., Inc.* 887 So.2d 763, 766 (Miss. 2003); *Miss. Transp. Comm'n v. McLemore,* 863 So.2d 31, 34 (Miss. 2003); *Crane Co. v. Kitzinger,* 860 So.2d 1196, 1201 (Miss. 2003) (citing *Whitten v. Cox,* 799 So.2d 1, 13 (Miss. 2000); *Thompson Mach. Commerce Corp. v. Wallace,* 687 So.2d 149, 152 (Miss. 1997)).

¶27. We recognize that *Smith* and its progeny stand for the propositions that a county or municipality can only act through its minutes and those actions must be evidence in county or municipality's minutes. *Id.* at 709. However, *Smith* and its progeny are inapplicable under the facts in the instant action. The facts in the case sub judice do not deal with contract formation nor authority to bind the locality or municipality to the terms of a contract. Instead, the issue presented in the instant action deals with whether an officer of the locality or municipality can render testimony which attempts to explain or clarify his actions which are contained in the minutes. We hold that Rogers' testimony was independently relevant to the issue of whether he had authority to alter the settlement agreement or to postpone the closing of the transaction. According to *Smith* and its progeny, the minutes would disclose the existence and nature of a contract. However, Rogers' testimony as to his authority in connection with the contract or its terms is a matter of which he was both capable and competent to testify.

16

¶28. On the issue of whether Rogers had the authority from the TRA to direct the appraisers to conduct Appraisal 2, the record is clear. In its final judgment and order, the trial court ruled that Rogers' instructions to the appraisers were made in writing and were contained in letters from Rogers to each appraisers dated December 18, 2001, and January 24, 2002. Further, the trial court ruled that the actions of Rogers in instructing the appraisers concerning the special assumption to be utilized by them in arriving at the values of the three tracts of property, i.e., not to consider the effect on value resulting from improvements made by TRA, were authorized by the TRA and ratification of the authorization is contained in the minutes of TRA's June 20, 2002, meeting.

¶29. Thus, the trial court held that Rogers acted properly within his scope of authority in instructing the appraisers to conduct Appraisal 2. The Landowners present non-persuasive arguments that the trial judge abused his discretion in admitting Rogers' testimony. Thus, without a showing that the trial judge abused his discretion in allowing Rogers' testimony, we find no error in admitting Rogers' testimony.

### IV. Whether the trial court erred in refusing to award attorneys' fees to the Landowners for breach of the settlement agreement.

¶30. The Landowners argue that the settlement agreement provided for an award of attorneys' fees under Section 20. Section 20 provides:

> In the event that any disputes arise regarding the interpretation or performance of this Agreement, the parties hereto agree that the dispute shall be settled in the courts of the State of Mississippi. In the event that any party hereto files suit in court to enforce any provision of this Agreement, then the prevailing party shall be entitled to its reasonable attorneys' fees, expert fees, court costs and expenses associated therewith.

17

The settlement agreement was executed by all parties between November 1 and 8, 2001. Appraisal 1 was conducted and dated November 27, 2001. On January 16, 2002, the Landowners filed their motion to enforce based upon Appraisal 1. Thus, following execution of the settlement agreement, the Landowners sought legal action to enforce this agreement. Because of such, TRA contends that the trial court was correct in denying the Landowners' request for an award of attorneys' fees.

¶31. We have held that parties may by contract provide that in the event a dispute arises, the losing party must pay the prevailing party reasonable attorneys' fees. *Theobald v. Nosser,* 752 So.2d 1036, 1042 (Miss. 1999); *Grisham v. Hinton,* 490 So.2d 1201, 1206 (Miss. 1986); *Faulkner Concrete Pipe Co. v. United States Fid. & Guar. Co.,* 218 So.2d 1, 3 (Miss. 1968); *Alexander v. Fid. & Cas. Co.,* 232 Miss. 629, 632-33, 100 So.2d 347, 348 (1958). The Landowners offer no authority to buttress their argument for attorneys' fees. The record bears the point that it was the Landowners who first sought legal action to enforce the provisions of the settlement agreement. Since the trial court denied the Landowners' motion to enforce based upon Appraisal 1 as well as their motion to reconsider, it cannot be said that the Landowners were successful in bringing an action to enforce the settlement agreement. We decline the invitation to make an award of attorneys' fees under the present circumstances. We hold that the trial court did not abuse its discretion in refusing to award the Landowners attorneys' fees in the instant action.

## CONCLUSION

¶32. We hold that the trial court had a sufficient basis for refusing to enforce Appraisal 1 and Appraisal 2 for the reasons set forth supra. Further, we find that the trial court had a

18

sufficient basis for ordering Appraisal 3 as well as establishing February 1, 2002, as a reasonable closing date. The testimony of TRA's chairman, Chris Rogers, was independently relevant to the issue of his authority with regard to the settlement agreement and the closing. We hold that the trial court was correct in refusing to make an award of attorneys' fees to the Landowners under the language of the settlement agreement.

¶33. An award of prejudgment interest is well within the discretion of the trial judge. However, such an award is available only if the money due was liquidated and there was no legitimate dispute that the money was owed. Since there was a genuine dispute as to the legitimacy of Appraisal 1 and Appraisal 2, it was error for the trial court to make an award of prejudgment interest in the instant action. To that extent, we reverse the judgment of the trial court and render a judgment in favor of TRA in the amount of $56,350.08. The Landowners are hereby ordered to refund TRA $56,350.08 within ninety (90) days of this opinion. If such payment is not made within ninety (90) days of this opinion, TRA shall be entitled to interest at a rate of 8% per annum thereafter. In all other aspects, the trial court's judgment is affirmed.

¶34. **AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

 **SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, CARLSON, DICKINSON AND RANDOLPH CONCUR. DIAZ, J., NOT PARTICIPATING.**