IRVING, J.,
for the Court.
¶ 1. This appeal arises out of a contract between Houlan Kendrix and James Huc-kaby. The Calhoun County Chancery Court found for Huckaby and ordered Kendrix to pay Huckaby a total of $7,600. Kendrix appeals and asserts that the chancellor erred because his decision was against the weight of the evidence, because the evidence is insufficient to sustain the chancellor’s judgment, and because the chancellor failed “to recognize that [Ken-drix] did everything he could to attempt to complete his part of the contract....”
¶ 2. We affirm, although we find that the chancellor erred in finding that the four corners of the contract were sufficient to dispose of this matter. We also find that the sum the chancellor ordered Kendrix to pay was in error, and we therefore modify the amount of the judgment. We address this as a separate issue below, as it was not raised by Kendrix on appeal.
FACTS
¶ 3. On December 29, 1988, Kendrix and Huckaby entered into a written contract that is titled “Rental Agreement.” The contract concerns a piece of property in Calhoun County, owned by Huckaby, that contains a house, a shop, and an old service station. When the contract was signed, the home was fully furnished, and the shop contained molds and machinery. According to the written terms of the contract, rental payments of $400 per month were to be made for fifteen years, with an additional $8,000 due at the end of the fifteen-year period, for a total contract payment of $80,000. The contract also contains provisions for who would be responsible for the contract in the event of the death of either party.
¶4. The contract contains no language indicating that it was actually a rent-to-own contract, nor does the contract specify which party would be responsible for maintaining insurance on the property. Despite this, the parties agree that they intended to have a rent-to-own contract, with Ken-drix receiving the property after payment of the $8,000 “balloon” payment. Furthermore, the parties agree that they originally intended that Kendrix would be responsible for insurance on the property.
¶ 5. Kendrix maintained insurance on the property until some time in the mid-1990s, when he allowed the insurance to lapse. Kendrix contends that this was because, after he successfully filed a claim, he was told by the insurance company that he could not continue to pay for the insurance because title to the land was not in his name. Huckaby took over the payment of insurance, although the parties dispute the exact circumstances surrounding Huckaby’s assumption of insurance *952 payments. At that time, Huckaby changed the language on the monthly receipts he gave Kendrix from “land and house purchase” to “rent.”
¶ 6. In January, 2004, Kendrix alleged that he approached Huckaby to offer the $8,000 balloon payment, but Huckaby insisted that their contractual fifteen-year period had not yet run. Kendrix maintains that, as a result, he left without giving the $8,000 to Huckaby. By contrast, Huckaby contends that Kendrix never approached him with an offer of the $8,000. Both parties agree that Kendrix continued to make monthly payments of $400 to Huckaby, and Huckaby accepted those payments. On January 25, 2005, Kendrix’s attorney informed Huckaby by letter that Kendrix wanted to purchase the property and was ready to pay $3,200, which he maintained was the remainder of the balloon payment. Huckaby refused to deed the property to Kendrix, and Kendrix sued Huckaby.
¶ 7. Huckaby filed an answer and a cross-complaint against Kendrix, seeking payment for rent for the period of time Kendrix lived on the property after Huc-kaby had declared the contract null and void because of Kendrix’s alleged breach by failing to keep the property insured and by failing to pay the $8,000 balloon payment. Huckaby also sought possession of the property and attorney’s fees.
¶ 8. The chancellor found that the contract between the parties was an unambiguous rental contract. The chancellor then went on to find that, even if the contract were ambiguous, looking at the intent of the parties, it was clear that Kendrix’s payment of the insurance was a necessary component of the contract, and that Ken-drix did not tender the $8,000 balloon payment as he was required to do at the end of the fifteen-year period. The chancellor noted that this finding would be the same if he took parol evidence into account. The chancellor further found that the specific performance requested by Kendrix, the transfer of the property from Huckaby to Kendrix, was impossible because Huc-kaby no longer owned the property.[1] Consequently, the court ordered Kendrix to pay the $3,200 outstanding on the contract, as well as $4,400 in rent for eleven months when Kendrix lived on the property but tendered no payment to Huckaby. The chancellor also gave Kendrix thirty days to remove himself from the property. Aggrieved by this ruling, Kendrix instituted the current appeal.
¶ 9. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 10. There is a three-tiered approach that courts use in interpreting a contract: the “four corners” of the document, the “ ‘canons’ of contract construction,” and extrinsic or parol evidence. Tupelo Redevelopment Agency v. Abernathy, 913 So.2d 278, 284(¶ 13) (Miss.2005) (citations omitted). The four corners approach looks only at the language used in the contract. Id. The canons are to be used only if the four corners of the document are insufficient to interpret the contract, and extrinsic or parol evidence is to be used only if the contract remains ambiguous after application of the four corners and the canons. Id.
¶ 11. In this case, the chancellor found that the meaning of the contract *953 could be ascertained from simply applying the four corners test. Having done so, the chancellor found in favor of Huckaby on the basis that the contract was a simple rental agreement. We find that this determination was incorrect, as Huckaby freely admitted in his sworn answer to Kendrix’s complaint that the contract was a rent-to-own contract, rather than a rental agreement. Essentially, the chancellor’s finding that the document was an unambiguous rental agreement contradicts the sworn filings of both parties. Regardless, as we explain below, we find that the chancellor correctly ruled in favor of Huckaby.

1. Weight of the Evidence

¶ 12. Kendrix contends that the chancellor’s decision was against the overwhelming weight of the evidence. Although he frames this argument in terms of the denial of his motions for a new trial and judgment notwithstanding the verdict, we note that only his motion for a new trial challenges the weight of the evidence, as both a motion for a directed verdict and a motion for a judgment notwithstanding the verdict (JNOV) challenge the sufficiency of the evidence at trial.[2] See Coho Res., Inc. v. Chapman, 913 So.2d 899, 904-08 (¶¶ 12-28) (Miss.2005).
¶ 13. Rule 59 authorizes new trials in actions tried without a jury. “On a motion for a new trial in an action without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.” M.R.C.P. 59(a)(2). Additionally, a chancellor’s factual findings are given great deference, and we “will not disturb a chancellor’s findings unless [the findings were] manifestly erroneous.” Stockstill v. Gammill, 943 So.2d 35, 40(¶ 8) (Miss.2006) (citing Rice v. Pritchard, 611 So.2d 869, 872 (Miss.1992)).
¶ 14. After reviewing all the evidence, we cannot say that the chancellor erred in refusing to grant a new trial. The undisputed facts reveal that Kendrix and Huc-kaby entered into a contract whose terms included monthly payments and a final balloon payment,[3] at which time Huckaby would transfer the property to Kendrix’s possession. However, Kendrix and Huc-kaby disagree as to whether the balloon payment was tendered in a timely fashion. Although Kendrix contends that he offered the payment and Huckaby refused to accept it, Huckaby testified that Kendrix never offered to pay the $8,000, and that the conversation referenced by Kendrix actually concerned a check that had been rejected for insufficient funds. Given this conflicting evidence, the chancellor was entitled to accept whichever version of events he found more credible. We cannot say that the chancellor’s findings were manifestly erroneous.
¶ 15. Furthermore, Kendrix admitted during his testimony that the maintenance of insurance was part of the original contract:
*954 Q. At the time y’all entered into that [the contract], you also had an oral agreement, did you not, that you would pay the insurance on the house?
A. Yes, sir, we did.
Kendrix then went on to testify that he was told by the insurance company that he would not be able to pay for the insurance directly because he did not own the property. Kendrix maintained, however, that he offered to reimburse Huckaby for the cost of the insurance premiums. Posed against this is Huckaby’s testimony that Kendrix failed to pay the insurance for a year before Huckaby discovered the lack of insurance. Huckaby also testified that the insurance did not lapse as a result of the insurance company refusing to allow Kendrix to pay for the insurance, but because Kendrix ceased paying voluntarily. Huckaby maintains that their rent-to-own contract changed to a rental only contract after Kendrix stopped paying for insurance. Supporting this contention is Ken-drix’s admission that the wording on the receipts he received from Huckaby changed in December of 1995 to indicate that the payments received were for “rent” rather than for “house and land.” Under these circumstances, the chancellor is not manifestly in error for finding that Ken-drix’s payment of insurance was an essential term of the contract that Kendrix failed to meet.
¶ 16. The chancellor’s ruling is not against the overwhelming weight of the evidence, and he did not err in refusing to grant Kendrix a new trial.

2. Sufficiency of the Evidence

¶ 17. While a motion for a new trial challenges the weight of the evidence, “[a] motion for a JNOV tests the legal sufficiency of the evidence supporting the verdict....” McFarland v. Entergy Miss., Inc., 919 So.2d 894, 899-900(¶ 15) (Miss.2005) (quoting White v. Yellow Freight Sys., Inc., 905 So.2d 506, 510(¶6) (Miss.2004)). When reviewing the sufficiency of the evidence supporting a chancellor’s decision, we “will not disturb the factual findings of a chancellor when supported by substantial evidence unless ... the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard.” Gulf Coast Research Lab. v. Amaraneni, 877 So.2d 1250, 1252(¶ 8) (Miss.2004) (quoting Gannett River States Publ’g Corp. v. City of Jackson, 866 So.2d 462, 465(¶ 11) (Miss.2004)). We will reverse only “if the chancellor’s findings are unsupported by substantial credible evidence....” Id. (quoting Frierson v. Delta Outdoor, Inc., 794 So.2d 220, 223(¶ 6) (Miss.2001)).
¶ 18. After reviewing the record, we find that substantial evidence supports the chancellor’s decision. There was a bevy of conflicting evidence that we have already reviewed in our discussion of the weight of the evidence supporting the chancellor’s decision. We also find that there is sufficient evidence to support the chancellor’s verdict, and the chancellor did not err in refusing to grant a directed verdict or motion for a judgment notwithstanding the verdict.

3. Kendrix’s Attempts to Satisfy the Contract

¶ 19. In this contention, Kendrix claims that Huckaby admitted on the stand that Kendrix “had done everything he should have done except pay for insurance upon the property.” Although Huckaby did admit during questioning by Kendrix’s attorney that he would have transferred the property to Kendrix if Kendrix had paid the insurance, this admission was immediately corrected upon questioning by Huc-kaby’s own attorney:
*955 Q. No. I said — listen to me. I said he asked you a question that if he had paid the insurance on the house, like he was supposed to, if you would have conveyed it to him?
A. Sure would.
Q. Well, all right.
A. If he’d done everything he promised.
Q. If he’d abided by the contract, if he had paid you the $8,000 on the end and all this?
A. (Witness nods head up and down.)
[[Image here]]
Q. But what I’m saying, it was more than just insurance that he had to do?
A. Right.
This exchange and other testimony by Huckaby made it clear that he believed not only that Kendrix had failed to maintain insurance, as required by the contract, but also that he had never received the $8,000 from Kendrix. Specifically, Huckaby testified that Kendrix had never offered to tender payment of the $8,000.
¶ 20. Kendrix claims that he has not defaulted on the contract and that the lower court, as a court of equity, should have required Huckaby to transfer ownership of the property to him. As we have already found, the chancellor’s decision was not against the weight of the evidence and sufficient evidence undergirds the decision. Furthermore, as noted throughout this opinion, whether Kendrix defaulted under the terms of the contract was strongly contested at trial. In the face of such conflicting testimony, the chancellor did not err in finding that Kendrix defaulted on the contract.

k- Amount of Judgment

¶21. The court ordered Kendrix to pay the outstanding balance of the balloon payment, $8,200, as well as eleven months of rental payments, totaling $4,400. The $3,200 was derived by subtracting the extra year of rental payments made by Kendrix, $4,800, from the $8,000 balloon payment, which the court indicated was part of the rental agreement between Ken-drix and Huckaby. Since we find that the chancellor erred in treating the agreement as a rental contract, with a $8,000 balloon payment, we find it necessary to adjust the amount which the court should have ordered Kendrick to pay. Consistent with our finding that this was a rent-to own contract, which was breached by Kendrick, the chancellor should have simply ordered Kendrick to pay the additional eleven months of rental payments, which amount, when added to the $4,800 already paid by Kendrick, would constitute full rental payments for the period of time in which Kendrick lived on the property after breaching the contract. Therefore, the court should have ordered Kendrix to pay Huckaby $4,400, not $7,600. We therefore affirm, but modify the court’s order to reduce the total amount of the judgment entered against Kendrix from $7,600 to $4,400.
¶ 22. THE JUDGMENT OF THE CHANCERY COURT OF CALHOUN COUNTY IS AFFIRMED AS MODIFIED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR. ROBERTS, J., NOT PARTICIPATING.

. Sometime in 2004, Huckaby conveyed all the property he owned to his children, subject to a life estate which he retained for himself.

. Although Kendrick framed his posttrial motion as a motion for judgment notwithstanding the verdict, this was procedurally incorrect, as a verdict is rendered by a jury. Here, the chancellor decided the case without the aid of a jury. The proper request would have been a motion to alter or amend the judgment, or for a new trial pursuant to Rule 59 of Mississippi Rules of Civil Procedure.

. It is not clear what the parties intended for the $8,000 balloon payment to represent. However, as stated by the chancellor, the $400 monthly rent appeared to be more than reasonable. Huckaby testified that the monthly payment was so low because he was supposed to live on the property with Ken-drix, although he did not.