963 So.2d 1248 (2007)
Alfred N. CRISLER, Appellant
v.
Adele Rawls CRISLER, Appellee.
No. 2006-CA-00933-COA.
Court of Appeals of Mississippi.
August 28, 2007.
*1250 J. Peyton Randolph, Jackson, attorney for appellant.
Michael Hartung, Laura Skeen Kuns, Jackson, attorneys for appellee.
Before MYERS, P.J., ISHEE, ROBERTS and CARLTON, JJ.
ROBERTS, J., for the Court.

STATEMENT OF THE CASE
¶ 1. Following the divorce of Alfred and Adele Crisler in 1999, a dispute arose as to the interpretation of a paragraph within the parties' property settlement agreement pertaining to the sale of property and the distribution of the proceeds. Mr. Crisler took the stance that, in accordance with his interpretation of the property settlement agreement, he was under no duty to give Mrs. Crisler her share of the proceeds until the entire property was sold, while Mrs. Crisler argued she was entitled to compensation after each partial sale. Additionally, each party, with their own interpretation of the property settlement agreement, disagreed upon what Mrs. Crisler's portion of the sale proceeds should be. After a hearing on the matter, the Chancery Court of Hinds County held in favor of Mrs. Crisler. Aggrieved, Mr. Crisler now appeals.

FACTS AND PROCEDURAL HISTORY
¶ 2. On September 29, 1999, after fifty years of marriage, the Crislers were granted a divorce on the ground of irreconcilable differences in the final judgment of the Chancery Court of Hinds County. At the time of their divorce, Mr. Crisler was a successful practicing attorney in the Jackson area and Mrs. Crisler was a homemaker. Incorporated into the final judgment was a property settlement agreement (Agreement) between the parties. The instant appeal is concerned with the interpretation and application of a portion of the Agreement, namely paragraph 13.2, titled "Airport Road Property." The paragraph spoke to the property's sale and distribution of the proceeds, and stated as follows:
Upon sale of the Airport Road Property, consisting of 42.89 acres, Al [Mr. Crisler] shall pay Dell [Mrs. Crisler] $300,000.00 of the net proceeds of the sale as a part of her equitable distribution from this martial estate. This distribution is based upon a sales price of $1.50 per square foot, which would result in Al receiving $400,608 and Dell receiving $300,000. If the property sells for more than $1.50 per square foot, then the net proceeds of the sale in excess of $1.50 per square foot shall be divided equally between the parties. Al and Dell shall pay their pro rata share of all income taxes generated by said sale.
Pursuant to the Agreement, on January 19, 2000, Mrs. Crisler executed a quit claim deed and in exchange Mr. Crisler executed a deed of trust on Mr. Crisler's one-quarter interest[1] in the property securing Mrs. Crisler's interest in the property as expressed in the Agreement.
¶ 3. In June of 2001, 6.36 acres of the Airport Road Property was sold for $170,208.17. Mr. Crisler voluntarily paid Mrs. Crisler $50,000 from the proceeds of the sale, and she executed a partial release with respect to the 6.36 acres. In July of 2005, 17.29 acres was sold to the Airport Parkway Commission. Mr. Crisler received *1251 $560,000 from this sale, which included $23,375 in compensation for what was identified as "Damages: Southern Parcel containing 6.99 Acres" by the Airport Parkway Commission. Subsequent to this sale, Mr. Crisler deposited the total $560,000 into an interest bearing account, and filed a petition for a preliminary and permanent injunction and specific performance of the Agreement against Mrs. Crisler on September 6, 2005, with the Chancery Court of Hinds County. Within his petition, Mr. Crisler requested a preliminary injunction enjoining Mrs. Crisler from disposing of the funds in the account without agreement of the parties or order from the court; a permanent injunction enjoining Mrs. Crisler from delaying disbursement of the funds or any additional funds from future sales; specific performance of the Agreement between the parties; and disbursement of the $23,375 to Mr. Crisler. In response, Mrs. Crisler filed her motion for contempt and declaratory judgment on September 15, 2005. Mr. Crisler would eventually file a motion for summary judgment, to which Mrs. Crisler would respond.
¶ 4. On February 13, 2006, a hearing was held in the Chancery Court of Hinds County on all pending motions. In an order dated May 1, 2006, the trial court denied Mrs. Crisler's motion for contempt and Mr. Crisler's motion for summary judgment, but granted Mrs. Crisler's motion for declaratory judgment finding paragraph 13.2 ambiguous as to whether Mr. Crisler's duty to pay Mrs. Crisler arose after each partial sale or only upon the sale of the entire property, and held that the parties' intent was to share proceeds after each partial sale. The trial court also held that paragraph 13.2 was unambiguous as to the financial apportionment of the proceeds, and that Mrs. Crisler was entitled to 42.82%[2] of each sale of the property as well as one-half of all net proceeds of each sale in excess of $1.50 per square foot. From this order, Mr. Crisler now appeals.

ANALYSIS
¶ 5. Our standard of review of a determination of ambiguity, or the lack thereof, of a contract, and its subsequent interpretation is two-tiered. Whether a contract is ambiguous is a question of law which we review de novo. Tupelo Redevelopment Agency v. Abernathy, 913 So.2d 278(¶ 12) (Miss.2005). If an ambiguity is found to exist, its interpretation is a matter for the trier of fact which we review under a substantial evidence/manifest error standard. Id.
I. WHETHER THE CHANCELLOR ERRED AS A MATTER OF LAW BY DETERMINING THAT THE PROPERTY SETTLEMENT AGREEMENT WAS AMBIGUOUS WITH RESPECT TO MR. CRISLER'S DUTY TO PAY MRS. CRISLER UPON SALE OF LESS THAN THE COMPLETE AIRPORT ROAD PROPERTY.
¶ 6. The parties' disagreement stems from their separate interpretations of the following portion of paragraph 13.2: "[u]pon sale of the Airport Road Property, consisting of 42.89 acres, Al [Mr. Crisler] *1252 shall pay Dell [Mrs. Crisler] $300,000.00 of the net proceeds of the sale. . . ." Mr. Crisler claims that the clause only requires him to pay Mrs. Crisler her portion of the proceeds upon the completed sale of the entire 42.89 acre property. Mrs. Crisler disagrees and argues that Mr. Crisler is required to divide the proceeds upon each and every partial sale of the property. The chancellor held the clause to be ambiguous. In finding that Mrs. Crisler's interpretation was in-line with the parties' intentions, the chancellor found that Mr. Crisler's interpretation was contrary to common sense as he could sell all but a fraction of the property and never be obliged to pay Mrs. Crisler any of the proceeds. The chancellor further found that the overall Agreement favored Mrs. Crisler and that the Agreement as a whole sought to limit the necessity of future contact.
¶ 7. Ambiguity arises when a reasonable person could have understood the terms of a contract to have more than one reasonable meaning. Farmland Mut. Ins. Co. v. Scruggs, 886 So.2d 714(¶ 13) (Miss. 2004). Here, the portion of paragraph 13.2 is, as identified by the trial court, subject to more than one reasonable interpretation. Namely, whether Mr. Crisler's duty to pay Mrs. Crisler her portion of the proceeds only arises upon sale of the entire property or upon each partial sale of the land. As such, ambiguity exists as to this portion of paragraph 13.2.
II. WHETHER THE CHANCELLOR ERRED IN HIS INTERPRETATION OF PARAGRAPH 13.2 AS IT PERTAINS TO MR. CRISLER'S DUTY TO PAY MRS. CRISLER HER PORTION OF THE PROCEEDS FROM THE SALE OF THE AIRPORT ROAD PROPERTY.
¶ 8. A property settlement agreement is akin to any other contractual obligation. In re Estate of Hodges, 807 So.2d 438(¶ 26) (Miss.2002). Therefore, it must be analyzed under those same principles applied to contract interpretation. The supreme court has set out a three-tiered analysis for contract interpretation. Abernathy, 913 So.2d at (¶ 13) (citations omitted).
First, the "four corners" test is applied, wherein the reviewing court looks to the language that the parties used in expressing their agreement. Second, if the court is unable to translate a clear understanding of the parties' intent, the court should apply the discretionary "canons" of contract construction. Finally, if the contract continues to evade clarity as to the parties' intent, the court should consider extrinsic or parol evidence. It is only when the review of a contract reaches this point that prior negotiations, agreements and conversations might be considered in determining the parties' intentions in the construction of the contract.
Id. (internal citations omitted). However, this is not a rigid step-by-step approach to contract interpretation, and overlapping of steps is not prohibited. West v. West, 891 So.2d 203(¶ 15) (Miss.2004). Finally, a reviewing court must keep in mind that "[t]he primary purpose of all contract construction principles and methods is to determine and record the intent of the contracting parties." Abernathy, 913 So.2d at (¶ 12).
¶ 9. We begin our review of the trial court's determination by stating,
[p]arties are bound by what they promise in writing. But, we are not bound to adopt a construction not compelled by the instrument in which we would have to believe no man in his right mind would have agreed to. A construction *1253 leading to an absurd, harsh or unreasonable result in a contract should be avoided, unless the terms are express and free of doubt.
Frazier v. Northeast Mississippi Shopping Ctr., Inc., 458 So.2d 1051, 1054 (Miss. 1984). Finding the portion of paragraph 13.2 speaking to when Mrs. Crisler was entitled to sale proceeds ambiguous, the trial court reasoned, and Mrs. Crisler argued in her brief, that Mr. Crisler could postpone paying Mrs. Crisler her portion of the proceeds indefinitely by simply selling all but a fraction of the property. Mr. Crisler argues that under that set of facts Mrs. Crisler could still recover her share by bringing an action against Mr. Crisler based upon breach of contract. While this is certainly true, and the Crislers are bound by the duties of good faith and fair dealing, it does not account for the possibility that sale of the complete 42.89 acres could be hindered not by the unscrupulous actions of Mr. Crisler, but the market itself. Under Mr. Crisler's interpretation, if he sells all but five acres, one acre, or just half an acre and is unable, through not fault of his own, to sell the remaining pieces of the property, his duty to pay Mrs. Crisler would never arise, and there would be no breach. We cannot say that any person in his/her right mind would have agreed to such a stipulation as part of the equitable of a distribution from dissolution of a marriage spanning fifty years.
¶ 10. Nevertheless, the parties' intent regarding when Mrs. Crisler is entitled to sale proceeds must be determined. A reading of the entire Agreement does not shed any light upon the parties' intent in this regard. However, as identified by the trial court, the parties' actions upon the first partial sale of the Airport Road Property demonstrates the collective intent of Mr. and Mrs. Crisler. Mr. Crisler's partial sale of 6.36 acres, and subsequent payment of $50,000 from the proceeds of this sale to Mrs. Crisler, indicates that Mr. Crisler's understanding of the agreement between the parties was that Mrs. Crisler was to be paid upon each partial sale. While this $50,000 payment does not comport with the pecuniary division detailed in the Agreement, it clearly evinces an intent on the part of the parties that Mrs. Crisler receive payment upon the sale of the property, be it a complete or partial sale. This is also evident in a letter sent by Mr. Crisler soon after the Agreement was signed. Mr. Crisler stated,
By this letter, Alfred N. Crisler hereby irrevocably authorizes the attorney, agent, or title company handling the closing of the sale of the undivided one-quarter interest to pay over and/or assign that portion of the sale proceeds and/or note and deed of trust above described directly to Adele Rawls Crisler in exchange for her simultaneous delivery of a Release and cancellation of the Deed of Trust outstanding. . . .
This is exactly what occurred upon completion of the first partial sale of the property. Mr. Crisler can hardly argue now that this was not his understanding of the intent of the parties concerning paragraph 13.2. Based upon the foregoing, we cannot say the trial court manifestly erred in his interpretation of the subject clause. Therefore, this issue is without merit.
III. WHETHER THE CHANCELLOR ERRED AS A MATTER OF LAW IN DETERMINING THAT THE PROPERTY SETTLEMENT AGREEMENT WAS UNAMBIGUOUS WITH RESPECT TO THE DIVISION OF PROCEEDS.
¶ 11. Mr. Crisler argues that the chancellor erred and should be reversed *1254 "as the property settlement is ambiguous with respect to the division of the proceeds for partial sales of the subject property." The chancellor found,
[t]he language of the Agreement is clear that Mrs. Crisler is entitled to $300,000 [of] the net proceeds of the sale as part of [her] equitable distribution. The language is also clear that Mrs. Crisler is further entitled to one-half of the net proceeds of the sale in excess of $1.50 per square foot.
¶ 12. While agreeing that this is a reasonable interpretation of the language in paragraph 13.2, Mr. Crisler contends that an equally reasonable interpretation is that Mrs. Crisler is entitled to the greater amount of either $300,000 or 50% of the net proceeds if the property sold for more than $1.50 per square foot, whichever is greater. We cannot agree.
¶ 13. The language of the clause, as it pertains to the distribution of proceeds, is clear. Mrs. Crisler is to receive $300,000 upon sale of the property at the appraised value of $1.50 per square foot. In addition, if the property sells for more than $1.50 per square foot, she and Mr. Crisler shall equally divide the proceeds in excess of $1.50 per square foot. Had the parties wished to restrict Mrs. Crisler's share to whichever amount was greater they could have added such language as they did in the very next paragraph of the Agreement. In paragraph 13.5 the parties divided receivables and other items associated with "Crisler and Crisler, Attorneys at Law." As part of this division, the last sentence stated, "Al shall pay Dell one-half of fees he receives from the Boweling Estate or $13,000.00, whichever is greater." (emphasis added)
¶ 14. Mr. Crisler argues that by using the word "if" rather than "and" at the beginning of the third sentence of paragraph 13.2 the intent of the parties is made clear. Pointing out that "if" is defined by Webster's Third New International Dictionary Unabridged, 1124 (1986) as inter alia "in the event that," and "on condition that," Mr. Crisler claims that "if" is more akin to "or" rather than "and." He further argues that reading "if" in the manner contemplated by the trial court treats the second sentence as superfluous. This is not the case. Supplementing the above definitions for the word "if" does not change the accuracy of the interpretation derived by the trial court or cause ambiguity. The first sentence makes clear that Mrs. Crisler is to receive a total of $300,000 from the sale of the property. The second sentence was included in explanation of this figure and preparation for the third sentence. The third sentence explains that in the event that, or on condition that, the property is sold for more than the price per square foot identified in sentence two the parties are to divide the proceeds derived from this excess equally. Therefore, despite the use of the word "if," this issue is without merit.
IV. WHETHER THE CHANCELLOR ERRED IN FINDING THAT MRS. CRISLER IS ENTITLED TO $337,365.92[3] FROM THE PROCEEDS OF THE TWO PARTIAL SALES IN THE AMOUNT OF $730,322.75[4].
¶ 15. Mr. Crisler first argues that the chancellor erred in including the *1255 $23,375 paid to him in the sale to the Airport Parkway Commission for damages to the remaining unsold portion of the property. Mr. Crisler states that this amount was paid to compensate him for the taking of the only access the property had to Highway 475, and did not constitute sale proceeds. However, a diminution in the value of the remaining property is a diminution in the value of Mrs. Crisler's interest in the property. As such, the $23,375 represents a future loss in sale proceeds, to which Mrs. Crisler is entitled to her proportionate share.
¶ 16. Mr. Crisler next argues that the chancellor erred in awarding Mrs. Crisler 42.82% of the $170,209.17 he received from the first partial sale of the property. He claims that the parties agreed that Mrs. Crisler would receive $50,000 for her share of the proceeds of this sale and the chancellor disregarded this agreement between the parties. However, the parties did not have the power to agree to alter the provisions of the Agreement. Paragraph 16.1 of the Agreement states, "[t]he parties understand and acknowledge that upon incorporation of this Agreement into an Order of the Court, it shall become an order of the Court and it cannot thereafter be altered except by a Court of competent jurisdiction." Therefore, regardless of what the parties agreed to pertaining to the proceeds from the first sale, it does not change what Mrs. Crisler is entitled to under the Agreement. Therefore, this issue is without merit.
¶ 17. THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR.
NOTES
[1] In August 1999, shortly before the Agreement was entered into, the parties had an appraisal done on the Airport Road Property. The appraisal valued the entire 42.89 acres, or 1,868,288 square feet, at approximately $2,800,000. This was based upon a value of $1.50 per square foot. As Mr. Crisler owned an undivided 2/8th interest in the property, the value of his share, based upon the appraisal, equated to approximately $700,608.
[2] It is apparent from the record that the chancellor arrived at this percentage by dividing Mrs. Crisler's $300,000 share into the total $700,608 the parties expected to receive based upon the August 1999 appraisal of $1.50 per square foot.
[3] While the chancellor held that she was entitled to $337,365.92, the total amount due by Mr. Crisler was reduced by $50,000 to account for what Mrs. Crisler had already received subsequent to the first partial sale.
[4] The chancellor identified $386,322.75 as sale proceeds at the rate of $1.50 per square foot, and the remaining amount of $343,885.42 as sale proceeds in excess of that rate.